**UNITED STATES of America**

v.

**MAINE LOBSTER COMPANY, Inc.; Benson Lobster Company; Willard-Daggett, Inc.; E. C. Palmer, Inc.; Samuel L. Armstrong; Charles E. Olson; and John E. Willard, Jr.**

Crim. No. 57–36.

United States District Court
D. Maine, S. D.
Dec. 20, 1957.

Peter Mills, U. S. Atty., Portland, Me., John J. Galgay, Hartsdale, N. Y., and Alan L. Lewis, Anti-Trust Division, Dept. of Justice, New York City, for plaintiff.

Jacob Agger, Philip G. Willard, Frank P. Preti, Portland, Me., for defendants.

GIGNOUX, District Judge.

On October 15, 1957 an indictment was returned in this court charging the four corporate and three individual defendants with a violation of Section 1 of the Sherman Act (26 Stat. 209, 15 U.S.C.A. § 1). It charged that the defendants combined and conspired with each other, and others, including various Maine lobster dealers located in Portland and Rockland, Maine, to fix and establish a maximum price at which they shall purchase live Maine lobsters during the shedder season; to adopt, maintain and adhere to the maximum purchase price so fixed; and to invite, solicit and induce other lobster dealers in the Rockland, Maine area to join in the combination and conspiracy, all in unreasonable restraint of the interstate trade and commerce in live Maine lobsters.

On December 6, 1957 the defendants filed a motion to dismiss the indictment for the reason that Leroy Ames, of Vinalhaven, Maine, a regular and otherwise qualified member of the Grand Jury which returned the indictment, was dismissed from all participation in the proceedings on the sole ground that he was, by occupation, a lobster fisherman. The defendants contend that, Ames being the only member of the Grand Jury engaged in the lobster industry, his dismissal constituted an intentional exclusion from the Grand Jury of a class of workers and was prejudicial to the defendants' interests.

Hearing on the aforesaid motion was held before this Court on December 16, 1957, all parties being represented by their respective attorneys, and written briefs and oral arguments were presented for the consideration of the Court. Filed with the Government's brief was the affidavit of Richard B. O'Donnell, Esquire, trial attorney in the Anti-Trust Division of the United States Department of Justice, setting forth the circumstances surrounding the discharge and excuse of Grand Juror Ames from the Grand Jury. At the hearing the defendants introduced in evidence the testimony of Morris Cox, Esquire, Clerk of this Court with reference to Ames' discharge.

On the basis of Mr. O'Donnell's affidavit, Mr. Cox' testimony and the records of this Court relating to these proceedings, this Court finds that the facts concerning Grand Juror Ames' discharge from the Grand Jury, are substantially without dispute and are as follows:

1. Grand Juror Ames was duly empaneled as a member of the Grand Jury

drawn for service at the April, 1957 Term of this Court and sat as a member of this Grand Jury from April 15, 1957 until formally excused from service by the Clerk of this Court on August 15, 1957. During the period of his service Ames participated in the deliberations of the Grand Jury on various matters submitted to it, but he did not participate in the Grand Jury deliberations which led to the return of the indictment in the instant proceeding.

2. Ames was listed on the Grand Jury roster as a lobster fisherman at Vinalhaven, Maine, and he was in fact such at the time of his excuse.

3. On August 15, 1957 Mr. O'Donnell, who was duly authorized to conduct Grand Jury proceedings in the District of Maine, conferred with the United States Attorney for the District of Maine and Mr. Cox regarding the presentation to the Grand Jury of evidence of possible violations of the anti-trust laws in the lobster industry. Learning that Ames was on the roster of the Grand Jury, Mr. O'Donnell asked John J. Galgay, Esquire, one of his associates, so to inform the Honorable George C. Sweeney, United States District Judge for the District of Massachusetts, who had been duly designated to act as a United States District Judge for the District of Maine. Mr. Galgay thereupon telephoned Judge Sweeney, who was on vacation in Wolfeboro, New Hampshire. He informed him of the proposed investigation of the lobster industry, reported the presence of a lobster fisherman on the Grand Jury and called to Judge Sweeney's attention that under Rule 6(g) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. a grand juror could be excused by the court for cause shown.

4. After hearing Mr. Galgay's statement of the problem, Judge Sweeney discussed the matter by telephone with Mr. Cox and instructed him to verify Ames' occupation, and if he were in fact a lobster fisherman, to excuse him from further Grand Jury duty. Mr. Cox verified Mr. Ames' occupation by telephone conversation with Mrs. Ames on the same day and through Mrs. Ames notified Mr. Ames that he was excused from Grand Jury duty. This was confirmed by letter on August 16, 1957.

5. Evidence concerning possible violation of the anti-trust laws in the lobster industry was presented to, and heard by, the Grand Jury between August 20 and October 15, 1957. On October 15, 1957 the Grand Jury returned the indictment in the instant case, in which various corporate and individual lobster dealers are named as defendants. On the same date it returned a second indictment charging the Maine Lobstermen's Association, an association of lobster fishermen, and Leslie Dyer, its President, with an illegal conspiracy to fix and maintain a minimum price for live Maine lobsters, in violation of the anti-trust laws. United States v. Maine Lobstermen's Ass'n, D.C.Me., 160 F.Supp. 115.

6. The records of this Court show that more than twelve Grand Jurors concurred in the finding of the indictment in the instant proceedings.

■ In the opinion of this Court the defendants' contention that the dismissal of Grand Juror Ames because he was a lobster fisherman "constituted an intentional exclusion from the Grand Jury of a class of workers and was prejudicial to the defendants' interest" is wholly without warrant. Rule 6(g) of the Federal Rules of Criminal Procedure specifically provides that "At any time for cause shown the court may excuse a (grand) juror either temporarily or permanently * * *". From the circumstances as herein above stated concerning Judge Sweeney's excuse of Grand Juror Ames, it can only be concluded that he believed there was "good cause" which warranted the discharge or excuse of this juror from the Grand Jury. See also 28 U.S.C.A. § 1863.

■ One of the circumstances involved was that the Grand Jury was about to investigate charges that lobster dealers, including those later named as defendants in this case, had conspired to victimize lobster fishermen by fixing the

prices at which they would purchase live lobsters from the fishermen. As a lobster fisherman, it was reasonable to suspect that Grand Juror Ames might have been one of the aggrieved parties against whom the alleged conspiracy was directed, a position from which bias or prejudice might well be presumed. Another circumstance involved was that the Grand Jury was also about to investigate an alleged price-fixing conspiracy among the lobster fishermen themselves. As a lobster fisherman it was reasonable to suspect that Grand Juror Ames might have been at least a possible prospective defendant, an intolerable position in which to place any juror.

Rule 6(g) vests a broad discretion in the court with respect to the excuse of a Grand Juror, particularly where the interests of fair and impartial administration of justice are concerned, and this Court cannot conclude that Judge Sweeney's excuse of Grand Juror Ames in the instant proceedings constituted an abuse of this discretion. In the opinion of this Court Judge Sweeney's action was wholly within both the letter and the spirit of Rule 6(g).

The defendants, in supporting their contention that Ames' discharge constituted "an intentional exclusion from the Grand Jury of a class of workers" rely on such cases as United States v. Foster, D.C.S.D.N.Y.1948, 80 F.Supp. 479, 483, where the court speaks of "a systematic exclusion of all working people and all members of the colored race from the Grand Jury" at the time of the organization of the Grand Jury. These cases condemn any such systematic exclusion. The present case, however, in no way parallels such cases. In order to bring the present case within the reasoning of the Foster case, the defendants would have to show a systematic exclusion of all lobster fishermen at the time of the organization of the grand jury. There is nothing in the circumstances surrounding the dismissal of Grand Juror Ames to support such a theory. See also United States v. Dennis, 2 Cir., 1950, 183 F.

2d 201, 216; Mamaux v. United States, 6 Cir., 1920, 264 F. 816; United States v. Fujimoto, D.C.Hawaii 1952, 102 F.Supp. 890, 894.

There appear to be two controlling cases relating to the discharge of a grand juror and the effect on a subsequent indictment returned by the remaining grand jurors. United States v. Mitchell, C.C.D.Oregon 1905, 136 F. 896 establishes that if a grand juror has been discharged "for good cause shown to the court," and if the requisite number of grand jurors concurred in the indictment, then the defendants cannot speculate on any possible prejudice to them from such discharge. The court there stated (at page 904):

"The record shows that these jurors were discharged 'for good cause shown to the court.' Since there was necessarily an affirmative vote of 12 jurors to find a bill, the absence of these jurors could not have affected the result. It was suggested that they might, if present, have influenced a change in the affirmative vote by persuasion, but it goes without saying that there is no presumption against the indictment that these jurors would have endeavored to exert such influence, or would have succeeded in so doing; and, before the court can consider any objections made, it must at least appear, not from the belief expressed, but from the facts stated, that the defendant has suffered some impairment of a substantial right or some prejudice, or that the things complained of violate the requirements of a positive statute. Moreover, the power of the court to discharge a juror for good cause shown is undoubted, and the possible or probable effect of the absence of such a juror on the subsequent proceedings of the grand jury does not admit of inquiry."

And, even assuming that the discharge of a grand juror had been improper, the court in Jones v. United

**126**

States, 9 Cir., 1908, 162 F. 417, at page 421 thus stated the applicable law:

"It has been many times decided that the improper discharge of a juror will not vitiate an indictment, provided that the number necessary to find it remain. United States v. Belvin (C.C.) 46 F. 381; Gladden v. State, 12 Fla. 562; Smith v. State, 19 Tex.App. 95; Portis v. State, 23 Miss. 578; State v. Wilson, 85 Mo. 134; Commonwealth v. Burton, 4 Leigh (Va.) 645, 26 Am.Dec. 337."

See also United States v. Fujimoto, supra, 102 F.Supp. at page 896.

As has been noted, more than the requisite number of twelve grand jurors, required by Rule 6(f) of the Federal Rules of Criminal Procedure concurred in the finding of the instant indictment. Thus, even if the discharge of Grand Juror Ames had been improper, there having been no systematic exclusion of a class, it would still not have vitiated the indictment.

For the foregoing reasons the defendants' motion to dismiss the indictment must be, and it hereby is, denied.