**UNITED STATES of America**

v.

**John F. GIBSON, Herbert Schiffman and James Stamos.**

**Crim. No. 1–79–23.**

United States District Court, S. D. Ohio, W. D.

May 8, 1979.

James C. Cissell, U. S. Atty., Cincinnati, Ohio, for plaintiff.

F. Lee Bailey, James Michael Merburg, Boston, Mass., Timothy A. Hickey, Jack C. Rubenstien, Martin S. Pinales, Cincinnati, Ohio, for defendants.

## OPINION

PORTER, Chief Judge:

Defendants in the within action each have filed a separate motion to dismiss the indictment on the ground that all union-affiliated persons were excluded from the grand jury which handed down the instant indictment. Because all three defendants have made substantially the same arguments, the Court will consider this branch of the motions to dismiss together in this Opinion.[1]

## I. *BACKGROUND*

On September 28, 1977 in the course of impaneling the grand jury at issue, the Honorable Timothy S. Hogan engaged in the following colloquy with the prospective grand jurors:

THE COURT: Now, before we go any further, let's ask everybody, including Mr. _____ and Mrs. _____ Do any of you belong to any labor union? Any labor union?

A VOICE: I work for one.

THE COURT: You work for a labor union?

A VOICE: Yes.

THE COURT: Anyone else belong to any labor union?

A VOICE: I belong to the Clothing Union.

THE COURT: Please?

A VOICE: A clothing union.

THE COURT: I can't hear.

A VOICE: Clothing union.

THE COURT: The Clothing Union?

A VOICE: Amalgamated.

THE COURT: Anyone else? And the union for which you work?

---

1. Defendants Schiffman and Stamos have filed identical motions to dismiss and supporting memoranda. Defendant Gibson's motion and supporting memorandum, while it differs in form, on this issue makes substantially the same arguments. The Court therefore has consolidated for decision this branch of the motions to dismiss.

A VOICE: Hotel and Restaurant Employees and Bartenders International.

THE COURT: And your name, please?

MS. ANDERSON: Judith Anderson.

THE COURT: Pardon?

MS. ANDERSON: Judith Anderson.

THE COURT: Judith Anderson.

Now, does anybody work for any labor union? Any close members of any of your family, that is your immediate family; wife, husband, brother, sister, son, mother, father any of the close members of our family work for any labor union or have any connection with a labor union? We don't want you to think from these questions that we think labor unions are bad. That has nothing to do with the question. There is a possibility of some investigation by this grand jury into something that may be union-connected, and it's only one union, and that's why we ask because it would be embarrassing to somebody to be on this grand jury and run into that and have some connection with it.

\* \* \* \* \* \*

O.K. Now, Miss Anderson, you will be excused from service with this grand jury. That will also be true as a matter of discretion as to Miss Burwinkel—

A VOICE. Basford.

The court: —Miss Basford. You also will be excused. Thank you for coming here today, and you are being excused from service for this grand jury.

(*See* Extract of Proceedings, *In the Matter of Impaneling of a Grand Jury,* attached hereto as Appendix A).

Judge Hogan has filed with the Court a "Certificate in Amplification of the Record," stating the grounds on which Basford and Anderson were excused. As Judge Hogan explains, prior to impaneling this grand jury, the United States Attorney informed the Court that its agenda included an investigation into matters connected with the Hotel and Restaurant Employees and Bartenders International Union. With this in mind, Judge Hogan excused Anderson because of her connection with the subject union.

At the time there also were in the courtroom other members of the panel who were going to be discharged on other grounds. Judge Hogan reasoned that "if only Anderson had been excused [and not Basford], it would have amounted to a disclosure to those . . . about to be discharged that the Union referred to was the Hotal & Restaurant Employees & Bartenders International Union." Judge Hogan concludes: "that was considered undesirable and for that reason, to dilute the identification, Basford was excused." (*See* Certificate in Amplification of the Record, at 1–2, attached hereto as Appendix B).

## II. *ISSUES*

The issue before the Court, as defendants Schiffman and Stamos have drawn it, is "whether the inquiries directed to potential grand jury members . . . and the exclusion of potential members based upon affirmative responses to those inquiries violated the provisions of 28 U.S.C. §§ 1861 *et seq.,* and require the dismissal of the indictment."

We believe that, at the outset, it deserves emphasis that the defendants do not claim that union-connected persons were excluded from the jury venire, and we therefore need not delve into the jury selection process in the Southern District of Ohio. Rather, the defendants contend that, through voir dire, Judge Hogan selectively and systematically excluded union-affiliated persons from the particular grand jury which issued the instant indictment. Defendants rely on the Jury Selection and Service Act, 28 U.S.C. §§ 1861 *et seq.*

The Court has plowed this ground before; these defendants' arguments approximate those made in a pre-indictment motion to dissolve the grand jury at issue, filed by these defendants and others. We therefore are obliged in this Opinion to engage in an encore of our earlier performance in this case.

Against this background and after thorough consideration, we have concluded that the claim of systematic exclusion is a "red

herring." Having once been enticed into considering this question in that context, see *In Re Special Grand Jury Proceedings: Hotel and Restaurant Employees' and Bartenders' International Union*, MS–1–78–19 Opinion (doc. 24) at pp. 5–12 (S.D.Ohio Aug. 30, 1978), we will not again fall into the same trap. Instead, for reasons appearing more fully below, we believe that Judge Hogan's having excused Basford and Anderson must be measured against the law concerning the District Court's authority to voir dire potential grand jurors, and to excuse individuals because they may be unable to render impartial jury service, or in order to preserve grand jury secrecy.

## III. FINDINGS AND CONCLUSIONS

### A. Systematic Exclusion

 Defendants have focused their claim of systematic exclusion on the provisions of the Jury Selection and Service Act, 28 U.S.C. §§ 1861 *et seq.*, which require the District Courts to adopt a "written plan for random selection of grand . . . jurors," 28 U.S.C. § 1863(b)(5), designed to provide "juries selected at random from a fair cross section of the community," 28 U.S.C. § 1861, and to guard against discrimination in jury selection on, *inter alia*, the ground of economic status, 28 U.S.C. § 1862. Defendants correctly state that § 1866(c) prohibits exclusion from grand jury service of an identifiable class of persons, except as expressly permitted by the Act.

Defendants' principal argument is that Judge Hogan adopted a formula whereby he excluded all union members and union-affiliated persons from the grand jury at issue. This, defendants claim, caused the exclusion of a group which comprises approximately forty percent (40%) of the registered voters in the community.

The record, however, adequately reflects and, to the extent necessary, the Court finds as fact that both Basford and Anderson were excused on grounds other than mere union membership or affiliation. To the contrary, Judge Hogan excused Ms. Anderson on the ground that she might not be able to render impartial jury service,[2] and he excused Ms. Basford to preserve grand jury secrecy.[3] Stated another way, the Court finds that Judge Hogan did not exclude an identifiable class of persons on account of economic status or otherwise.[4] We therefore turn to the law governing the District Court's authority to voir dire potential grand jurors, and to excuse them for cause.

### B. Exclusion for Cause

The Court's authority to excuse or exclude grand jurors for cause is founded upon Rule 6(g) of the Federal Rules of Criminal Procedure, and upon 28 U.S.C. § 1866(c)(2). Rule 6(g) provides in pertinent part:

> At any time for cause shown the court may excuse a juror either temporarily or permanently, and in the latter event the court may impanel another person in place of the juror excused.

This provision must be read in *pari materia* with 28 U.S.C. § 1866(c)(2), which provides:

> [A]ny person summoned for jury service may be . . . (2) excluded by the court on the ground that such person may be unable to render impartial jury service or that his service as a juror would be likely to disrupt the proceedings . . .

*See* 1 Wright, *Federal Practice and Procedure: Criminal* § 112.

---

2. *See* 28 U.S.C. § 1866(c)(2), discussed *infra*.

3. On this point, we note that Ms. Basford was excused, at least in part, for the benefit of those to be investigated by the subject grand jury. One of the avowed justifications for grand jury secrecy is to protect the accused who later may be exonerated from premature disclosure of the fact that he has been under investigation. *See* 1 Wright, *Federal Practice and Procedure: Criminal* § 106 (1969).

4. It is undisputed that Ms. Basford and Ms. Anderson were the only union-affiliated persons excused by Judge Hogan. Because they were excluded for cause, we find that it was only by mere happenstance or coincidence that Judge Hogan excused the only union-affiliated persons who became part of the panel.

■ Because the Court has the authority to excuse potential grand jurors for cause, it also must have the power to question potential jurors on appropriate subjects in order to measure their ability to serve impartially. *Compare United States v. Hoffa,* 349 F.2d 20, 32–33 (6th Cir. 1965), *aff'd on other grounds,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) (containing approving discussion of a District Court's voir dire of potential grand jurors).

■ *United States v. Maine Lobster Co.,* 160 F.Supp. 122 (D.Maine 1957) is on point as to the exclusion of Ms. Anderson. The Court there held that it was not an abuse of discretion to have excused a lobster fisherman from service on a grand jury which was to investigate (1) charges that lobster dealers had conspired to victimize lobster fisherman, and (2) an alleged price-fixing conspiracy among lobster fishermen themselves. The Court rejected defendants' contention that the exclusion of the lobster fisherman "constituted an intentional exclusion from the Grand Jury of a class of workers and was prejudicial to the defendants' interest," finding that because of his occupation and position, "bias or prejudice might well be presumed." *Id.* at 125.[5]

We are of the opinion that, under the unusual circumstances present in this case, the exclusion of Basford also was proper. As previously noted, § 1866 provides for exclusion of a juror whose presence "would be likely to disrupt the proceedings," while Rule 6 provides for exclusion "for cause." Against the background of the requirement of grand jury secrecy, *Fed.R.Crim.Pro.* 6(e), and in view of the Court's discretion with respect to the excuse of a grand juror, *United States v. Maine Lobster Co.,* 160 F.Supp. at 125, we believe that these rules are sufficiently broad to allow excusing a grand juror to preserve traditional confidentiality.[6] We find as fact that this is the ground on which Judge Hogan excused Ms. Basford.

## C. Cognizable Group

■ As previously noted, *see* note 5 *supra,* the Court believes that even if we were to find that organized labor comprises a cognizable group, defendants have not stated a legal ground for relief. While the Jury Selection and Service Act clearly establishes the right of all litigants to have grand juries selected at random from a fair cross-section of the local community, 28 U.S.C. §§ 1861 *et seq.,* it does not grant the right to a grand jury which itself is composed of a fair cross-section. A litigant's right in this connection "is one of rejection and not of selection," *United States v. Kline,* 221 F.Supp. 776, 783 (D.Minn.1963), and the Court has "broad discretion" in excusing veniremen whom it has reason to believe may not be able to render an impartial decision, *United States v. Rodriguez,* 459 F.2d 983, 984 (9th Cir. 1972). Thus, in view of our findings in this case and the ground on which we have decided this motion, whether organized labor comprises a cognizable group quite simply is of no consequence here.[7]

---

**5.** Even if the Court were to find that organized labor comprises a "cognizable group" under the Jury Selection and Service Act, *see, e. g., United States v. Potter,* 552 F.2d 901, 903 (9th Cir. 1977), *Maine Lobster* still would be applicable in the context in which we have decided this motion. We do not, however, suggest that this rationale would have justified exclusion of any and all labor-affiliated persons. As previously noted, we find as fact that Judge Hogan did not attempt to do so.

**6.** Authority on this point admittedly is sparse, almost to the point of being non-existent.

**7.** In any case, we reiterate our conclusion that union-affiliation does not denote membership in a cognizable group. *See In Re Special Grand Jury Proceedings: Hotel and Restaurant Employees' and Bartenders' International Un-*

*ion,* MS–1–78–19 Opinion (doc. 24) at pp. 5–12 (S.D.Ohio Aug. 30, 1978). To be considered cognizable for this purpose, a group must have a common interest which cannot adequately be represented if the group is excluded from the jury selection process. *United States v. Potter,* 552 F.2d 901, 904 (9th Cir. 1977). Cognizability rests both on the size of the putative group and on the unique nature of the prejudice which affects it. *Foster v. Sparks,* 506 F.2d 805, 820 (5th Cir. 1975).

Union affiliation does not satisfy these requirements. Although it clearly denotes a group of adequate size, we take judicial notice that the character of this group is both heterogenous and fluid. Such a classification takes no account of other factors such as actual income, personal background, ethnic background, and the like. Such a group would

## IV. *CONCLUSION*

In sum, the Court concludes that Judge Hogan excused Ms. Anderson from grand jury service on the ground that she might not be able to serve impartially, 28 U.S.C. § 1866(c)(2); *see also Fed.R.Crim.Pro.* 6(g), and that he excused Ms. Basford in order to preserve grand jury secrecy, *id.; see generally Fed.R.Crim.Pro.* 6(e). These actions were legally justified, and in our view were the wisest course under the unusual circumstances present in this case. These motions to dismiss therefore are overruled.

### APPENDIX A

### EXHIBIT A

### UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO WESTERN DIVISION

— — —

In the matter of:

Impaneling of a grand jury.

— — —

Before:

Honorable Timothy S. Hogan,

District Judge

Cincinnati, Ohio
September 28, 1977—9:15 a. m.

— — —

Present:

The prospective grand jurors.

Anthony W. Nyktas, Assistant United States Attorney.

— — —

encompass a wide range of persons, including both high and low income groups. Union-affiliated persons have divergent attitudes and characteristics which defy classification. *Compare United States v. Kleifgen,* 557 F.2d 1293, 1296 (9th Cir. 1977). *See In Re Special Grand Jury Proceedings: Hotel and Restaurant Employees' and Bartenders' International Union, supra.*

The Court does, however, note that it does not follow from this conclusion that labor affiliated persons arbitrarily may be excluded from

THE COURT: Good morning, ladies and gentlemen, Mr. Nyktas.

Now, we are gathered here this morning, as you all know, for the purpose of qualifying a grand jury in this Federal District of Southern Ohio.

You have all gotten a notice and a subpoena and the subpoena says something about 18 months. I guess that's enough to scare anybody half to death. While the term of a grand jury does extend over a period of 18 months, the likelihood is that you will be called in approximately once a month for approximately several days at a time.

There is one matter which may take a little longer than that consecutively, but that shouldn't be very frequent, should it, Mr. Nyktas?

MR. NYKTAS: No, your Honor. I anticipate that they will probably come in for maybe two to three days once a month.

THE COURT: Yes. So that's the way it works.

Now, if the work of a grand jury becomes too heavy in comparison to what other grand juries have been called to do, the simplest way to remedy it is qualify another grand jury; and, as a matter of fact, the reason this grand jury is being qualified is that the regular grand jury which is already in session and has been over a period of some time here, the work has simply gotten too heavy, and to rectify that this grand jury is being qualified. Now, as you can understand then, if your work becomes too heavy, we will qualify another one because there is no law that limits the number

grand jury service, any more than blonde haired persons may be excluded arbitrarily. The Court may excuse potential grand jurors only in accordance with the provisions heretofore discussed. Any deviation from these rules may be challenged as an abuse of discretion. *See United States v. Maine Lobster Co.,* 160 F.Supp. at 125. *See also Anderson v. Dun & Bradstreet, Inc.,* 543 F.2d 732, 734 (10th Cir. 1976) (petit jury).

of grand juries that can be qualified in a given district.

Now, as we will see, 23 people are qualified for a grand jury, and there must always be 16 in attendance. The total number 23; 16 in attendance. You will see that does leave some leeway so that if during your service you are called at a particular time it is possible to excuse you from that particular session; but you will notice there is not a great deal of leverage because it would be impossible to excuse more than five or six realistically for any given session; and it does require that we all work together to see that the load falls evenly.

But you can understand from the possibility of excuses and the number that if you have something or something comes up that gives you a real good reason not to attend a particular session, you may ask for and the likelihood is that you will obtain an excuse.

Now, what we are trying to promise you is this, that everybody connected with the judicial system in this courthouse, the United States Attorney, the Court and everybody else, the Marshal, we all realize that jury service of any kind, whether it be grand jury or petit, is a hardship on most people. That's one reason we are so tough, if that's the right word, about excuses, because it's tough on everybody and we all realize that, and we will do everything possible to make your load as light as possible and make it as little an inconvenience to you as we possibly can.

Now, we will ask Mr. _____ _____ to act as foreperson of this grand jury. And, Mr. _____, we understand that's all right with you?

MR. _____: (Nodding.)

THE COURT: And we will ask Mrs. _____ to serve as vice foreperson; and we understand that's all right with you, Mrs. _____.

And will the clerk please administer the oath to the foreperson and the vice foreperson?

THE CLERK: Mr. _____ and Mrs. _____, will you please stand and raise your right hand?

(The Clerk administered the oath to Mr. _____ and Mrs. _____.)

THE COURT: Now, before we go any further, lets ask everybody, including Mr. _____ and Mrs. _____. Do any of you belong to any labor union? Any labor union?

A VOICE: I work for one.

THE COURT: You work for a labor union?

A VOICE: Yes.

THE COURT: Anyone else belong to any labor union?

A VOICE: I belong to the Clothing Union.

THE COURT: Please?

A VOICE: A clothing union.

THE COURT: I can't hear.

A VOICE: Clothing union.

THE COURT: The Clothing Union?

A VOICE: Amalgamated.

THE COURT: Anyone else? And the union for which you work?

A VOICE: Hotel and Restaurant Employees and Bartenders International.

THE COURT: And your name, please?

MS. ANDERSON: Judith Anderson.

THE COURT: Pardon?

MS. ANDERSON: Judith Anderson.

THE COURT: Judith Anderson.

Now, does anybody work for any labor union? Any close members of any of your family, that is your immediate family; wife, husband, brother, sister, son, mother, father any of the close members of our

family work for any labor union or have any connection with a labor union?

We don't want you to think from these questions that we think labor unions are bad. That has nothing to do with the question. There is a possibility of some investigation by this grand jury into something that may be union-connected, and it's only one union, and that's why we ask because it would be embarrassing to somebody to be on the grand jury and run into that and have some connection with it.

All right. So would you read then, please, the next 21 names in point of call, Mr. Schulz; and as your name is called, will you please stand?

THE CLERK: . . . Judith M. Anderson.

THE COURT: O.K. Now, Miss Anderson, you will be excused from service with this grand jury. That will also be true as a matter of discretion as to Miss Burwinkel—

A VOICE: Basford.

THE COURT: —Miss Basford. You also will be excused. Thank you for coming here today, and you are being excused from service for this grand jury.

Your next two names then, please.

THE CLERK: . . . .

THE COURT: All right. Now, from what you have heard, those of you whose names have been called, is there any reason that occurs to any of you why you shouldn't serve on this grand jury?

Now, once again, we realize that it's tough, it's an interference with your time; but what we must bear in mind is that somebody has to do it. And you all know how your names are obtained; it's purely by chance. It comes off the voters' list, so that nobody puts his finger in and says "We are going to tap this one, we are going to tap that one," and so on.

A grand jury has to be called. There are the voters' lists. The names have been pulled out purely by chance, and then the chances applied to those names and out comes your name.

There would be a real differentiation between you and, say, the rest of the members of the panel; there would be some slight possibility, not of excusing you, but of transferring you to what's called a petit jury, and we will hear a little bit more about that. But petit jury service, you are relatively certain to operate for about 20 days and it could be considerably longer and could be much less notice and witness a very good chance of no excuse. For instance, there is a jury down here now that's been in session two weeks and I have heard it will be another four. That's petit jury.

But anybody want to say anything before we ask the clerk to swear you in?

A VOICE: Your Honor, I have a letter from my company asking for consideration to schedule duty at a later date perhaps.

THE COURT: What is the name of the company?

A VOICE: Peoples Financial. It's Peoples Investment Company. The office manager here is Peoples Financial Corporation.

THE COURT: O.K. We are unable to excuse you for the convenience of a company. We are sorry about that.

Anyone else?

Very well. Will the clerk then please administer the oath to the members of the panel whose names have been called?

THE CLERK: Please raise your right hand.

(Clerk administers oath.)

THE COURT: Very well. Be seated, please. And the other members of the panel whose names have not been called, which we believe are Miss Wilson, Mr. Yerina and Mr. Davis. Right?

THE CLERK: Yes, your Honor.

THE COURT: You are excused and may go about your own affairs. You are perfectly welcome to stay here, but you are free to leave too.

\* \* \* \* \* \*

Appendix B to follow.

APPENDIX B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

IN THE MATTER OF :

 :

IMPANELING OF A GRAND JURY :

CERTIFICATE IN AMPLIFICATION
OF THE RECORD

On September 28, 1977, at 9:15 A.M. a Federal Grand Jury was impaneled at Cincinnati.

Shortly before the Court had been informed by the United States Attorney that the agenda of matters to be brought before this Grand Jury included an investigation of matters connected with the Hotel & Restaurant Employees & Bartenders International Union (headquartered in Cincinnati).

In response to inquiry at the start of the impaneling with respect to labor union connections of the members of the panel, two members, Dolores J. Basford and Judith Anderson, identified themselves as:

Anderson—connected with the H. & R. E. & B. I. U. (an exam of her questionnaire disclosed "as a Receptionist").

Basford—Amalgamated Clothing Union (member of).

Anderson, of course, had to be excused.

Basford was called to the box and seated as No. 11.

Thereafter Anderson was called to the box as No. 23. Both Anderson and Basford were excused before Anderson entered the box. It was stated by the Court that the Basford excuse was a matter of "discretion."

At that time there were in the Court Room three members of the panel who were going to be discharged because their serv-ices were not required—the 23 necessary were to be obtained without calling them.

Under the circumstances, if only Anderson had been excused, it would have amounted to a disclosure to those three about to be discharged that the Union referred to was the H. & R. E. & B. I. U. That was considered undesirable and for that reason, to dilute the identification, Basford was excused.

SO CERTIFIED.