UNITED STATES of America, Plaintiff,

v.

Laurence John LAYTON, Defendant.

No. CR–80–416 RFP.

United States District Court,
N. D. California.

June 24, 1981.

G. William Hunter, U. S. Atty., San Francisco, Cal., Alan J. Sobol, Sp. Asst. U. S. Atty., Dept. of Justice, Crim. Div., Washington, D. C., Robert L. Dondero, Michael D. Nerney, Stanford Svetcov, Asst. U. S. Attys., San Francisco, Cal., for plaintiff United States.

James F. Hewitt, Federal Public Defender, Frank O. Bell, Jr., Chief Asst., Federal Public Defender, Tony Tamburello, San Francisco, Cal., for defendant Laurence John Layton.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

The defendant Laurence Layton moves to dismiss the indictment on the ground that the procedures employed to select the members of the grand jury which indicted him are constitutionally and statutorily defective.

The defendant was indicted on October 9, 1980, by Grand Jury No. 80–6. The foreman of that grand jury was a white male, as is Mr. Layton. The grand jury had been impanelled on September 10, 1980, from names drawn from the list of persons who registered to vote in this district in the 1976 general election. Counsel were appointed in early December, 1980, and made their first appearances in this matter at that time. The litigation has been extremely active and extremely expensive. Both the government and the defendant have filed a great many pretrial motions. The instant motion to dismiss the indictment was not, however, filed until June 8, 1981, over seven months after counsel were appointed and only a month before the scheduled date of trial, July 9, 1981.

The defendant challenges the Northern District's jury selection procedures on the following grounds:

(1) The Northern District's Jury Selection Plan (the "Plan") sets forth classes of people to be excused from jury service on individual request, but fails to make any finding that these classes would suffer extreme hardship and inconvenience from jury service. The Jury Selection Act of 1968 requires that the Plan make such a finding as to classes of people who are to be excused on request.

(2) The Plan's excusal categories are overbroad, resulting in underrepresentation of young people, poor people, minorities, women, and working people.

(3) In practice, judges are not excusing prospective jurors who claim to belong to one of the excusal categories, as required by the Plan and the statute. Instead, the deputy jury clerk is doing so by examining the juror qualification questionnaires to determine whether they are internally consistent, following up on some but not others, and allegedly using subjective rather than objective criteria.

(4) The deputy clerk has sometimes used "professional jurors"—people who have sat on juries before and expressed enjoyment of doing so—when an insufficient number of people respond to the summons and there is no time to send out more summons. The assistant federal defender's affidavit states that she is informed that this has occurred in petit juries and that she therefore assumes that it has also occurred in grand juries.

(5) The deputy clerk does not follow up on unreturned jury questionnaires. The number of unreturned questionnaires in-

creases at the end of each four-year period because the master list from which the names are drawn is becoming stale and many of the addresses are no longer correct. Defendant speculates that this leads to underrepresentation of the 18 and 24 age bracket because allegedly people in that bracket tend to move frequently.

(6) The assistant federal defender's affidavit states that the deputy clerk told a staff member in the defender's office that it seemed to him that most grand jury foremen have been white males.

 Based on these assertions, the defendant raises a number of statutory and constitutional challenges to this district's jury selection procedures. Each will be discussed below.[1]

## I. Statutory Challenges are Untimely

The Jury Selection Act of 1968, 28 U.S.C. § 1861, et seq. (the "Act") sets forth certain procedures for selecting fair and impartial juries to serve in federal courts. The policy of the statute is to ensure the right of each litigant in federal court to a jury "selected at random from a fair cross section of the community." 28 U.S.C. § 1861. Section 1862 prohibits discrimination in the selection of jurors on the basis of race, color,

---

1. A brief comment on recusal is appropriate. 28 U.S.C. section 455 provides, in pertinent part, that a judge should disqualify himself when he has personal knowledge of disputed evidentiary facts, when he is likely to be a material witness, or whenever his impartiality might reasonably be questioned. We believe that recusal is inappropriate. In the present opinion, we deny defendant's motion on the grounds of lack of timeliness, insufficiency of sworn statement, and failure as a matter of law to state facts amounting to a constitutional violation for which Layton would have a remedy. Thus, our ruling is confined to matters of law regarding the facial sufficiency of the motion; we have not been called upon to determine any disputed issues of fact. Therefore, the proscriptions of section 455(b)(1) requiring a judge to recuse himself when he has extrajudicial knowledge of disputed evidentiary facts is inapplicable.

Furthermore, even assuming the likelihood that any judge who has impanelled a grand jury may be called as a witness in an evidentiary hearing addressing the issue of the constitutionality of the grand jury foreperson selection procedures, such a judge is not precluded from determining whether a hearing on that issue is warranted. In King v. United States, 576 F.2d 432 (2d Cir. 1978), cert. denied, 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978), the court held that the fact that a judge would be a witness at an evidentiary hearing on habeas corpus did not disqualify him from determining whether such a hearing should be held. Similarly, in motions under 28 U.S.C. § 144 for disqualification of a judge, the law is clear that the judge to whom the motion is directed must determine whether the affidavit is sufficient to require that he recuse himself. Only if he finds the affidavit to be sufficient is he required to have another judge determine the veracity of the allegations. United States v. Olander, 584 F.2d 876 (9th Cir. 1978). Thus, these cases arising in analogous contexts establish that a judge may determine the sufficiency of allegations

supporting the holding of an evidentiary hearing even though he may later be called as a witness at that hearing. Indeed, the policy reasons supporting this rule is sound. Were the very filing of a motion under the Jury Selection Act enough to require the judge to recuse himself and hold the proceedings in abeyance until another judge could be designated, the business of the federal courts would be unduly disrupted. United States v. Long, 88 F.R.D. 701 (W.D.Pa.1981).

Nor do we find that this motion invokes the rule of section 455(a) mandating that a judge disqualify himself in any proceeding in which his impartiality might reasonably be questioned. A court is often called upon to pass on the validity or proper application of its own local rules. Questions relating to the validity of the jury plan would seem to fall into the same category. Moreover, there is nothing suspect about a court ruling on the sufficiency of allegations contained in a verified statement; such a ruling is an everyday occurrence in federal court.

We therefore conclude that this court need not recuse itself under section 455. In so ruling, we note that the goal of the section is to foster the appearance of impartiality. Potashnick v. Port City Constr. Co., 609 F.2d 1101 (5th Cir. 1980), cert. denied, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22. Nothing has been brought to the court's attention which has put into question the appearance of our impartiality in passing on this motion. Indeed, the Federal Public Defender agrees that recusal is necessary only if an evidentiary hearing on the foreperson selection issue would be conducted by a judge who has impanelled a grand jury. We feel that there is as much obligation upon a judge not to recuse himself when there is no occasion for him to do so as there is to recuse himself when grounds are present supporting recusal. Wolfson v. Palmieri, 390 F.2d 121 (2d Cir. 1968).

religion, sex, national origin, or economic status. Section 1863 requires each district court to adopt a jury selection plan designed to achieve the objectives of the Act.[2] That section provides, among other things that the plan shall specify classes of persons to be excused upon individual request, "if the district court finds, and the plan so states, that jury service by such class would entail undue hardship or extreme inconvenience to the members thereof" and that excusal of these classes would not be inconsistent with sections 1861 and 1862. Section 1865 of the Act requires that the chief judge of the district court, or such other district judge as the plan may provide, shall determine whether a person is unqualified for or exempt or to be excused from jury service. The Jury Selection Plan for the Northern District of California specifies that the general duty judge or the chief judge may make this determination. Section 1867(a) provides the exclusive procedure for challenging jury selection procedures as inconsistent with the Act. It provides that such a challenge must be made before the voir dire begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds for the motion, whichever date occurs earlier. Section 1867(d) provides that, if the motion contains "a sworn statement of facts which, if true, would constitute a substantial failure to comply" with the Act, the movant shall be entitled to present the testimony of the jury clerk, and certain other evidence, in support of the motion. Section 1867(f) provides that the movant shall have the right to inspect and reproduce certain papers and records used in the jury selection process at all reasonable times during the preparation of the motion. Hence, the statute provides

extremely liberal access to otherwise non-public jury selection records, which access makes it possible for the movant to state facts satisfying the requirement in section 1867(f) of a sworn statement, if such facts exist, and should also make it possible for the movant to comply with the extremely strict timeliness requirement in section 1867(a).

██ The defendant asserts a number of statutory challenges; namely, (1) that the Plan fails to make the required finding of hardship with respect to the excusal categories specified in the Plan, and that no such finding could be made because these classes would not, in fact, suffer extreme hardship as a result of jury service, (2) that excusal by the deputy clerk rather than a district judge violates section 1865, as well as being inconsistent with the Plan, (3) that the use of "volunteer jurors" violates the requirements in sections 1861 and 1866(f) that jurors be selected at random, and (4) that the jury selection system as a whole, including the excusal categories and the deputy clerk's failure to follow up on unreturned questionnaires, leads to substantial underrepresentation of a number of groups in violation of the requirements and policies of sections 1861 and 1862.

The first question is whether these statutory challenges comply with the procedures required under section 1867. That section, as noted above, provides that any statutory challenge must be asserted before the voir dire begins, or within seven days after the defendant did discover, or by the exercise of diligence could have discovered, the factual basis for the challenge, whichever date first occurs. The assistant federal defender does allege that she *actually* discovered the facts on which she bases this motion within seven days of the time she filed the motion. She

2. The plan must, among other things, "specify detailed procedures to be followed by the jury commissioner or clerk in selecting names" from sources such as voter lists. The procedures must "be designed to ensure the random selection of a fair cross section of the persons residing in the community in the district or division wherein the court convenes." 1863(b)(3). The plan must also "specify those groups of persons or occupational classes whose members shall, on individual request therefor, be excused from jury service. Such groups or classes shall be excused only if the district court finds, and the plan states, that jury service by such class or group would entail undue hardship or extreme inconvenience to the members thereof, and excuse of members thereof would not be inconsistent with sections 1861 and 1862 of this title.

does not, however, allege that she could not with the exercise of diligence have discovered these facts earlier. The better practice would be to include such allegations when a motion of this type is filed so late that questions of timeliness are certain to arise. It seems improbable that defendant's counsel could explain why these facts could not have been discovered earlier in this litigation.

Under section 1867(a), it is quite clear that facial challenges to the Plan are untimely. As noted above, the defendant demands dismissal of his indictment on the grounds that the Plan fails to make the required finding of hardship with respect to the excusal categories, that no such finding could reasonably be made, and that excusal of these categories results in underrepresentation of groups which are allegedly cognizable under the statute. The Plan is, however, a matter of public record, and these alleged defects in the Plan could have been discovered at any time, simply by reading the Plan. The assistant federal defender states that only recently did she receive a copy of the Plan, but she does not allege that the public defender's office was in any way prevented from examining the Plan at an earlier date.

As noted above, defendant's counsel made their first appearances in this matter in early December of 1980, over seven months before filing the instant motion. During this entire period, they have been chargeable with constructive knowledge of the contents of the Plan. *See U.S. v. Geelan*, 509 F.2d 737, 739–40 (8th Cir. 1974), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 666 (1975). Facial challenges to the Plan itself—that is, the challenge based on the Plan's failure to make a finding regarding hardship, and the statutory challenge to the excusal categories themselves—are thus clearly barred as untimely under the "seven day rule" in section 1867(a).

▮ The other statutory challenges which the defendant asserts are also barred

because they are untimely. The alleged factual bases for all of these challenges were eventually discovered by a simple inquiry directed to the deputy jury clerk. In *U.S. v. Geelan, supra*, the defendant also asserted a challenge based upon facts which did not appear on the face of the district's plan, but which could have been discovered, and which were eventually discovered, by a "simple inquiry" directed to the deputy clerk, such as the inquiry which eventually occurred in the instant case. The court held that this challenge, which was asserted thirty-six days after the arraignment, was untimely under section 1867(a). Thus, challenges based on the alleged excusals by the deputy clerk, the alleged use of "volunteer jurors," and the deputy clerk's alleged failure to follow up on unreturned questionnaires are also barred by their untimeliness.[3]

The right to a fair and impartial jury is so fundamental a right that, at first blush, it may seem hypertechnical to insist upon compliance with the timeliness requirement. The defendant's *constitutional* rights respecting jury selection are, however, preserved because they are unaffected by the seven-day rule. Thus, defendant has not forfeited the essential right to a jury drawn from a fair cross section of the community. He has only forfeited the right to insist that his jury be selected by the particular statutory procedures which Congress has deemed presumptively adequate to safeguard defendant's constitutional rights. Neither the Congress nor any court has ever determined that these statutory procedures provide the *only* means of obtaining a fair and impartial jury.

We must also keep in mind the extremely disruptive potential of this kind of motion. The instant case presents part of the picture. As mentioned above, counsel were appointed over seven months ago. Since then, thousands of dollars and hundreds of hours of attorney, investigative and paralegal time have been expended in preparation

---

**3.** There are independent reasons why these challenges must fail. See discussion *infra* at pp. 953–956.

for trial. Unless the proceedings to date have implicated some constitutional guarantee, the defendant cannot be allowed to disrupt this lengthy and costly litigation in order to complain of a statutory violation which he could have discovered at the very outset of this litigation.

Accordingly, the cases have been extremely strict in applying the Act's requirement that statutory challenges be asserted in a timely manner. In *U.S. v. Foxworth*, 599 F.2d 1 (1st Cir. 1979), for example, a statutory challenge was held untimely which was filed eight days after the appointment of counsel, where the grounds for the challenge had been known to counsel before the indictment was filed. In *U.S. v. Geelan, supra,* 509 F.2d at 739–40, defendant complained that the master wheel had not been replenished with a current list of registered voters, as required by the statute and by the district's jury selection plan, filing his challenge 36 days after his arraignment. As explained above, the court ruled that this challenge was untimely because the alleged statutory violation could have been discovered, as it ultimately was, by a simple inquiry. In *U.S. v. Arnett*, 342 F.Supp. 1255, 1258 (D.Mass.1970), the defendant asserted a statutory challenge which, like the instant motion, was based partly on alleged defects which appeared on the face of the district's jury selection plan. The motion, filed 39 days after the indictment was returned, was far more prompt than the instant motion, but the court ruled that it was untimely under section 1867(a) because the defendant could have discovered each of the alleged defects in the composition of the grand jury by examining the plan.

Courts have insisted upon extremely strict compliance with the procedural requirements for asserting lack of substantial compliance with the Act because

> Congress created a new remedy for substantial violations of the Act, regardless of whether the litigant challenging the jury had suffered any prejudice. As a price for this remedy, Congress was entitled to exact strict compliance with formal procedural rules .... the legislative history makes it clear that this requirement was considered independently important as a means for discouraging spurious challenges filed for dilatory purposes...

*U. S. v. Kennedy*, 548 F.2d 608, 613 (5th Cir. 1977), *cert. denied,* 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1978); *see also,* H.R. Rep.No.1076, 90th Cong., 2d Sess. (1968), U.S.Code Cong. & Admin.News 1976, p. 1792.

The statute, its legislative history, and the case law thus afford ample authority to deny those claims based on alleged defects in the Plan itself. Attorneys practicing before this court must be charged with constructive knowledge of the Plan, which is a matter of public record. The remaining statutory challenges are also barred by the seven-day rule in section 1867(a) because the facts underlying these challenges could long ago have been discovered by the exercise of diligence. As will be discussed below, "discovery" of jury selection records and certain other materials has been available throughout the course of this action upon an allegation that a motion of this type was being prepared. 18 U.S.C. § 1867(f). Therefore, all of the statutory challenges, which defendant asserts, are untimely under section 1867(a). Moreover, with respect to the challenges based on the alleged excusals by a deputy clerk rather than a judge, and on the alleged use of volunteer jurors, there exist independent reasons why denial is appropriate. Each of these claims will be discussed in detail below.

II. *Excusal of Prospective Jurors by Clerk Rather than by Chief Judge or by General Duty Judge, as Required by Plan and by Statute*

Assuming that this challenge were not barred by its untimeliness, the question is whether this practice has constituted a "substantial failure to comply" with the Act. There is no doubt that it violates the statute, which, in section 1865, states:

The Chief Judge of the district court, or such other district judge as the plan may provide, on his initiative or upon recommendation of the clerk ... shall determine ... whether a person is ... to be excused from jury service....

The Plan parallels the statute in this regard. Thus, the deputy clerk's practice of excusing people who check the appropriate boxes in the questionnaire constitutes a deviation from the statute. The question is whether it constitutes so substantial a failure to comply as to justify a dismissal or stay.

■ The cases establish that "determining the substantial compliance question requires that the alleged violations of the Act be weighed against the goals of the statute," which are (1) assuring a random selection from a fair cross section, and (2) assuring that selection, disqualification, and excusal is accomplished in an objective manner." *See U. S. v. Goodlow*, 597 F.2d 159, 161–62 (9th Cir. 1979), *cert. denied*, 442 U.S. 913, 99 S.Ct. 2830, 61 L.Ed.2d 280 (1979) (unauthorized excusal of *men* as well as women who have small children at home did not constitute substantial noncompliance because it did not frustrate goals of randomness and objectivity); *U. S. v. Maskeny*, 609 F.2d 183, 193 (5th Cir. 1980) (excusal by clerks did not constitute substantial violation where there was no showing that the clerk had made a significant number of erroneous determinations); *U. S. v. Kennedy, supra*, 548 F.2d at 612 (5th Cir. 1977) (stating that the widespread use of volunteer jurors constituted substantial failure to comply, but holding the challenge barred by untimeliness and by the failure to submit a sworn statement); *U. S. v. Evans*, 526 F.2d 701, 706 (5th Cir. 1976), *cert. denied*, 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1977) (held that clerk's practice of excusing jurors did not constitute substantial failure where he used no subjective criteria); *U. S. v. Davis*, 546 F.2d 583, 589 (5th Cir. 1977), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1978) (failure to make drawing from voter list public did not jeopardize randomness or cross-section and therefore did not constitute substantial violation); *U.*

*S. v. Tarnowski*, 429 F.Supp. 783, 785 (E.D. Mich.1977) (failure by clerk to empty and refill master wheel at time set by plan did not constitute substantial violation).

In determining whether particular statutory violations have undermined the Act's goals, courts have turned to the House Report, which states:

[The Act] embodies two important general principles: (1) random selection of juror names from the voter lists ... and (2) determination of juror disqualifications, excuses, exemptions, and exclusions on the basis of objective criteria only. These principles provide the best method for obtaining jury lists that represent a cross section of the community and for establishing an effective bulwark against impermissible forms of discrimination and arbitrariness.

H.R. 1076, 90th Cong., 2d Sess., *reprinted in* U.S.Code Cong. and Admin.News, 1968, pp. 1792, 1793.

In *Evans, supra*, and *Maskeny, supra*, it was held that the excusals by clerks involved no sacrifice of randomness and therefore did not constitute substantial violation of the Act. *Compare U. S. v. Hill*, 480 F.Supp. 1223 (S.D.Fla.1979), where the clerk had selected only 77 names from the master wheel, in order to choose 23 for a *single*, particular, grand jury. He excused 31 and thus selected the final 23 from only 46 names. He also excused several people whose requests for excusal a district judge had earlier denied.

■ It is true that in all of these cases dealing with excusal by clerks, evidence was taken in order to determine whether the clerk was using subjective or objective criteria. It is impossible to tell what kind of showing was made in the original sworn statements filed in those cases. By now, however, the case law has indicated that excusal by clerks constitutes substantial violation of the Act only if the clerk has been employing subjective or nonrandom criteria. In this case, the sworn statements contain no allegation that the jury clerk is employing such criteria and no facts which would

support such an allegation. Therefore, we find that the sworn statements do not allege facts which, if true, would constitute substantial failure to comply with the Act and defendant is not entitled to present evidence on the matter at this time.[4]

### III. *Alleged Use of Volunteer Jurors*

The assistant federal defender asserts that there is a great likelihood that volunteer or "professional" jurors sat on the grand jury which indicted the defendant Layton. Were there any foundation for this allegation whatsoever, we would deplore the situation. Further, we have no doubt that widespread use of volunteer jurors would constitute a substantial failure to comply with the Act. The discussion in *U. S. v. Kennedy, supra*, makes it abundantly clear that the use of volunteers, even those found through previous jury service for which the volunteers were randomly selected, destroys the randomness of the selection process. Moreover, the Act specifically provides that when there is a shortage of available jurors, the Marshal is to select more names at random. 28 U.S.C. § 1866(f). We would be deeply disturbed if persuaded that a volunteer juror sat on the grand jury which indicted the defendant Layton. There is not a scintilla of evidence contained in the sworn statement to show that this occurred.

The assistant federal defender's affidavit relates that she had a conversation with an unnamed staff member in the Clerk's Office, who stated that the same procedures were used to select both grand and petit jurors. The affidavit of a staff member in the defender's office states that she had a conversation in which the deputy jury clerk said that he believed that volunteers had sometimes been used on *petit* juries at some time in the past, but that the practice had ceased. There is no reference in either affidavit as to whether the deputy clerk stated or knew when the practice ceased, or how often volunteers were ever used. Ap-

parently, no staff member in the Clerk's Office ever made specific mention of volunteer jurors being impanelled on *grand* as opposed to petit juries.

■ On these facts, we find that there is essentially no sworn statement satisfying the requirement in section 1867(d) to support the allegation that volunteers served on the grand jury which indicted Mr. Layton—or, indeed, on any grand jury. There is no support for the statement whatsoever, except surmises and innuendo. As mentioned above, section 1867 requires that the motion contain a sworn statement of fact which, if true, would constitute a substantial violation of the Act. In the instant case, there is no sworn statement of fact concerning volunteers sitting on grand juries, but only a supposition with little to support it. We cannot justify disrupting these proceedings to hold an evidentiary hearing when we lack any factual foundation whatsoever. We believe Congress did not intend that a motion of this type could be filed on the basis of rumor, speculation, or guesswork.

Although there are few cases considering the sufficiency of particular sworn statements, the legislative history of the Act reveals that Congress viewed this procedural requirement as an extremely important one, because the requirement would make it possible for a judge to "review a challenge motion and swiftly dispose of it if it fails, on its face, to state a case . . . ." H.R.Rep. No.1076, 90th Cong., 2d Sess. (1968); S.Rep. No.891, 90th Cong., 1st Sess. 33 (1967). *See also, Blake v. CICH*, 79 F.R.D. 398 (D.Minn. 1978) (sworn statement that the jury "appeared skewed against minorities and young people" held too conclusory to satisfy the sworn statement requirement). Thus, the sworn statement requirement is, like the "seven-day" rule, an attempt to guard against the extremely disruptive potential of this kind of motion. We therefore find the sworn statement insufficient with respect to the use of professional or volunteer jurors on grand juries.

---

**4.** Defendant does not apparently argue that the clerk's granting of excuses violates any constitutional guarantee.

This may seem like a harsh result, but it should be remembered that

.... forfeiture of the statutory claim in no way affects the sanctity of a defendant's right to be tried by a jury drawn from a fair cross section of the community. While a properly preserved claim of substantial noncompliance with the Act would of course require reversal if meritorious, the fundamental justice of a conviction remains intact if the jury selection procedure did not transgress that due process guarantee.

*U. S. v. Kennedy, supra,* 548 F.2d at 614.

It is quite clear that the use of volunteers violates no constitutional guarantee, absent a strong showing that "the use of volunteers actually operated in a particular case to underrepresent some discernible group of persons." *U. S. v. Kennedy, supra* at 614. *See also, U. S. v. Anderson,* 509 F.2d 312 (D.C.Cir.1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975). There has been no such allegation here.

There is also an allegation that volunteer jurors have been used on an unspecified number of *petit* juries at an unspecified time in the past. The petit jury in this case, however, has not yet been impanelled. The defendant, of course, may not complain of the alleged use of volunteer jurors on other petit juries, but may insist that no such jurors are impanelled in his own case. It will be a simple matter to ensure that the petit jury contains no volunteer or professional jurors. Careful questioning during voir dire will reveal the presence of any such juror, who could then be challenged for cause. However, the sworn statement that volunteers have sat on other petit juries fails to state facts which, if true, would afford the defendant Layton any remedy under the Act.

Accordingly, we deny the defendant's motion to dismiss or stay on the ground that volunteer jurors have been impanelled on grand or petit juries.

## IV. *Failure to Follow Up on Nonreturned Questionnaires*

 The assistant federal defender asserts that the deputy jury clerk believed that only 65 percent of questionnaires are returned, and this number falls even lower toward the end of each four-year period, when the master wheel is becoming stale. It is unclear whether defendant is asserting a statutory or constitutional challenge on this basis.

The Ninth Circuit has considered the question and has held that the failure to follow up could not constitute substantial noncompliance with the Act because "section 1864(a) clearly provides for discretionary follow up by the clerk or by the jury commissioner." *U. S. v. Santos,* 588 F.2d 1300 (9th Cir. 1978), *cert. denied,* 414 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979). That section provides that "any person who fails to return a completed juror qualification form as instructed *may* be summoned by the clerk or jury commissioner forthwith to appear ... to fill out a juror qualification form." [Emphasis added.]

The Ninth Circuit was apparently not asked, as we seem to be, to consider any constitutional dimensions of this issue. Defendant urges that the failure to follow up causes underrepresentation of young people because the reason many forms are not returned is that the addressees have moved, and young people tend to move frequently. However, a constitutional violation requires substantial underrepresentation of a cognizable group. *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1978). Young people are not such a group. *U. S. v. Kleifgen,* 557 F.2d 1293 (9th Cir. 1977). Defendant does not specifically suggest that the failure to follow up unreturned forms leads to underrepresentation of any other particular group. The defendant has therefore alleged neither a constitutional nor a statutory violation.

## V. *Constitutional Challenge Based on Alleged Discrimination in the Selection of Grand Jury Foremen*

 Defendant alleges, based on the deputy jury clerk's personal impressions, that there may have been discrimination in the selection of foremen for grand juries

because most of the foremen are white males who have held supervisory positions. The statute does not address itself to the question of discrimination in the selection of foremen, so the only question is whether this constitutes a constitutional violation which Layton has standing to assert.

In *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), the Court held that discrimination in the selection of the grand jury foreperson violated the fourteenth amendment's guarantee of equal protection. In order to establish a prima facie case that discrimination has occurred, the defendant must show that "the procedure employed resulted in substantial underrepresentation of *his* race or of the identifiable group to which he belongs." *Id.* at 565, 99 S.Ct. at 3005 (emphasis added). In *Rose v. Mitchell*, the Court noted that the respondents in that case, as blacks, were members of such a group. The requirement that the defendant be a member of the disfavored class has been recognized in *Guice v. Fortenberry*, 633 F.2d 699 (5th Cir. 1980). The defendant Layton is not a member of any group which he alleges to be disfavored.

In addition to the fourteenth amendment's guarantee of equal protection, which protects against discrimination in the selection of foremen, the sixth amendment guarantees a defendant a grand jury drawn from a fair cross section of the community. The defendant need not be a member of the disfavored class in order to assert a sixth amendment challenge. But absent a strong showing that the impact of the grand jury foreperson is "so substantial as to influence or alter the unique qualities and characters of the jury's individual members," a defendant's sixth amendment right to a grand jury representing a cross section of the community is not violated even by purposeful discrimination in the selection of a foreperson. The office of foreperson involves purely ministerial functions which do not jeopardize the "diffused impartiality" sought to be attained from a fair cross section. Defendant has made no showing as to the influential nature of forepersons in this district which would support a sixth

amendment challenge. *See generally, U. S. v. Jenison*, 485 F.Supp. 655 (S.D.Fla.1979).

In conclusion, the allegation regarding discrimination in the selection of forepersons fails to state a claim under the statute, which does not consider the matter, under the equal protection clause, which protects only members of the excluded group, or under the sixth amendment, which guarantees only that the members of the grand jury will be drawn from a fair cross section of the community.

**VI. *Constitutional Challenge to the Practice of Excusing Certain Professional and Other Categories***

As explained above, the excusal categories appear on the face of the Plan, which Layton's attorneys can be charged with constructive notice. Hence, any *statutory* challenge to the categories is barred by the seven-day rule. Thus, any claim that these classes would not, in fact, suffer "extreme inconvenience" if forced to serve as jurors, as required by the statute, is barred because untimely asserted.

Defendant also asserts, however, that the breadth of the categories violates his due process rights to a grand and petit jury selected from a fair cross section of the community because the categories result in "substantial underrepresentation of women, minorities, working people, young people, and other cognizable classes." It is unclear which of these categories is claimed to be underrepresented as a direct result of the excusal categories.

This challenge must fail. The constitutional question is whether there is a *substantial* deviation from the cross section, with respect to a *cognizable* group. *U. S. v. Potter*, 552 F.2d 901 (9th Cir. 1977).

*Young people* are not a cognizable group. *See Potter, supra*, and cases cited therein. At least a dozen courts have reached this conclusion and only one case has recognized an age group as cognizable. *U. S. v. Butera*, 420 F.2d 564 (1st Cir. 1970). By the same token, old people are probably not a cognizable group.

"Working people" are probably not a cognizable group. There are no cases directly on point, although there are numerous cases holding that undereducated people are not cognizable. See, e. g., Potter, supra. Further, union affiliation does not denote membership in a cognizable group. U. S. v. Gibson, 480 F.Supp. 339 (D.Ohio 1979). Although it is true that daily wage earners may be a cognizable group, see Thiel v. Southern Pac. R. R., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946), we cannot see how the excusal categories in the questionnaire would tend to exclude such people at all.

As for women and minorities, both are, of course, "cognizable groups." See Ballard v. U. S., 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946). However, defendant has made no showing at all that the excusal categories in the questionnaire would have the effect of creating substantial underrepresentation of either of these groups. In fact, the professional categories listed probably include fewer blacks and women than white males. Exclusion of these categories would therefore tend to assure adequate representation of women and blacks. One of the categories (persons with young children or aged persons at home) would probably tend to exclude more women than men, but there is no showing that this results in underrepresentation of women in the final pool from which the jury is drawn. Since some of the other categories would tend to excuse more men than women, it is likely that a cross section is maintained. In any case, numerous cases have held that automatic excusal for women who must care for children is constitutionally permissible. U. S. v. Armsbury, 408 F.Supp. 1130 (D.Or. 1976); U. S. v. Briggs, 366 F.Supp. 1356 (N.D.Fla.1973). Furthermore, it has frequently been held that the excusal of certain occupational classes, for reasonable purposes, is not constitutionally infirm. Government of the Canal Zone v. Scott, 502 F.2d 566 (5th Cir. Canal Zone 1974). As for the claim that blacks have been excluded, this seems to have been made without any foundation whatever. We do not believe that any of the excusal categories would tend to exclude black people, and defendant has not explained why this would be so. Defendant has failed to make any showing that women and blacks are substantially underrepresented.

## VII. Statutory Right to "Discovery"

Under section 1867(f),[5] a litigant has an unqualified right to inspection of certain materials used in jury selection, during the preparation and pendency of a motion challenging the selection procedures under the Act. Test v. United States, 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975). This right is virtually absolute: the only limitation on this right of access is that the inspection must be done at "reasonable times." 28 U.S.C. § 1867(f). No probability of merit need be shown. U. S. v. Beaty, 465 F.2d 1376 (9th Cir. 1972). To avail himself of this right of access to otherwise nonpublic jury selection records, a litigant need only allege that he is preparing a motion challenging the jury selection procedures. There is no doubt on this point whatsoever.

Hence, the materials which defendant now seeks have been available to him at any time since the commencement of this litigation, upon an allegation that a motion under the Act was being prepared. The materials remain available: should defendant decide to prepare another motion under the Act, he will have an unqualified right to

5. The contents of records of papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation of presentation of a motion under subsection (a), (b), or (c) of this section, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service. The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion. Any person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both.

inspect the materials specified in section 1867(f). This is true whether or not the contemplated motion would be proper under the timeliness requirements in section 1867(a), and whether or not the motion satisfies the sworn statement requirement in section 1867(d). Should defendant be denied access to these materials by any staff member in the Clerk's Office, he should seek assistance from this court. Nothing in this court's rulings affects the defendant's unqualified right of access. The defendant should not, however, equate this right of access with a right to a continuance of his trial date, stay, or evidentiary hearing.

For the above reasons, it is ORDERED that the motion for dismissal or stay is DENIED.