UNITED STATES, Appellee,

v.

Daniel Phisco RAMIREZ,
Defendant, Appellant.

UNITED STATES, Appellee,

v.

Jairo VANEGAS–ORTIZ,
Defendant, Appellant.

UNITED STATES, Appellee,

v.

Jose Victor SANTIAGO–ESCOBAR,
Defendant, Appellant.

UNITED STATES, Appellee,

v.

Roberto PIEDRAHITA–SANTIAGO,
Defendant, Appellant.

UNITED STATES, Appellee,

v.

Anibal PELAEZ–ESCOBAR,
Defendant, Appellant.

UNITED STATES, Appellee,

v.

Reyes CARDALES–BARRIOS,
Defendant, Appellant.

Nos. 89–1698 to 89–1703.

United States Court of Appeals,
First Circuit.

Heard Aug. 4, 1989.

Decided Sept. 15, 1989.

Jose C. Romo Matienzo, Hato Rey, P.R., for appellant Daniel Phisco Ramirez.

John E. Mudd, San Juan, P.R., for appellant Jairo Vanegas Ortiz.

Luis Roberto Santos, Mayaguez, P.R., for appellant Jose Victor Santiago–Escobar.

Luis A. Medina Torres, for appellant Roberto Piedrahita–Santiago.

Yolanda Collazo Rodriguez, Los Angeles, Cal., for appellant Anibal Pelaez–Escobar.

Luis Rafael Rivera, for appellant Reyes Cardales–Barrios.

Warren Vazquez, Asst. U.S. Atty., Guaynabo, P.R., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief for the U.S.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

These are six appeals from an order of the district court denying defendants' motions to dismiss the indictment on the grounds that continuing the trial would violate their rights against double jeopardy. We stayed the trial pending resolution of the double jeopardy issue. *See Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977).

## I.

Defendants were indicted on May 17, 1989 for violations of 18 U.S.C. § 2 (aider and abettor = principal) and 46 U.S.C.App. § 1903(a), (c) & (f). The indictment charged that on May 12, 1989, the defendants were on board a vessel without nationality on the high seas, and aiding and abetting each other did knowingly, intentionally, and unlawfully possess with intent to distribute approximately 4,538.18 kilograms of marijuana. At their arraignment, all defendants pled not guilty.

■ A jury was selected and sworn on July 11, 1989, and direct examination of the government's first witness was completed. There can be no doubt that jeopardy had attached. *See Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). After the trial was adjourned for the day, the prosecutor was advised of a jury selection problem that had come to light in another unrelated case. In that case, the district judge terminated the jury selection process, dissolved the jury, and set another trial date. The venire from which the jurors were selected for defendants' trial was the same as the one used in the aborted case.

On the next day, July 12, just before trial was to start, the prosecutor informed the judge and counsel of what he perceived to be a flaw in the random selection of the venire.[1] The flaw as stated by the prosecutor was

that due to the small amount of jurors that were available, many of the jurors were called by phone and that this clerk gave them the option to appear, if they

---

1. 28 U.S.C. § 1867(b) provides:

(b) In criminal cases, before the voir dire examination begins, or within seven days after the Attorney General of the United States discovered or could have discovered, by the exercise of diligence, the grounds therefor,

whichever is earlier, the Attorney General may move to dismiss the indictment or stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

could appear, or be excused if they could not make it to court if they could form part of the jury.

The prosecutor further stated he had been informed that in the other case the district judge had found that the method used to obtain the jury venire violated the random selection process required under 28 U.S.C. § 1866.

After the prosecutor had finished his exposition the court stated:

There is no question. If they were just called not from the list, without following just the whim of the jury clerk, that is clear, crystal clear, that that violated the randomness requirement and in that case I will leave, of course, the option to the attorneys for the defendants to move or not move for a mistrial at this time and to dissolve the jury. You can do it, whatever you want. If you request that this jury be dissolved, I will do it. If you want to consult among yourselves and you are happy and satisfied with the jury that you have now, we can continue but you have the option. I will recess.

After a question from one of the defense attorneys, the court stated: "You can consult among yourselves and let me know, with the caveat, that if you request that this jury be dissolved, I will dissolve it. If you want the jury to continue, then we can continue. It is your just choice." After a recess of more than an hour, counsel for the defendants made known their wishes to the court.

Attorney Luis Medina, who represented defendant Roberto Piedrahita–Santiago, requested that the court declare a mistrial. Defendant Anibal Pelaez–Escobar, through his attorney Yolanda Collazo Rodriguez, also requested a mistrial. The four other defendants, through their respective attorneys,[2] informed the court that they wished to continue the trial with the jurors already selected. Attorney Mudd requested a recess until the next day so he could research the question of double jeopardy. The court

assured him that "you will have plenty of time for that." Attorney Romo stated:

However, we believe that the way the court at the beginning of this trial instructed the accused on how the jury selection was done, obviously was not the same way the Assistant District Attorney explained the way it really was done. So, looking into that, if there was a violation, a constitutional violation, obviously there should be a mistrial. We have a dilemma, however, that if we raise a mistrial without violation of constitutional rights, we will not be able to raise a double jeopardy and that is why our brother counsel asked for more time to study the point.

We don't want in any way to affect our defendant's right, so, our request is to continue with this jury trial but if the court decided there has been a violation of the constitutional right of the defendant, we join them, the request for the mistrial.

The court then had the prosecutor repeat what he had been informed occurred in the other case. The prosecutor told the court that in the other case there had been testimony by the jury clerks and deputy clerk as to how the jury venire was selected. The court then decided to have the jury clerk and deputy clerk testify as to the procedure that had been followed in selecting the venire.

The jury clerk, Mayra Borrero, testified as follows. Every four years the names of 50,000 prospective jurors are selected at random by computer from the electoral lists of Puerto Rico. A second random selection of 12,000 names is made from the list of 50,000. Juror questionnaires are then sent to those on the 12,000 name list. After eliminating those deceased or living outside of Puerto Rico, the questionnaires are given to the jury commission which determines those that are qualified to go into the qualified jury wheel for random selection as jurors.

---

**2.** Defendant Vanegas–Ortiz, Attorney John Mudd; defendant Cardales–Barrios, Attorney Ramonita Dieppa Gonzalez; defendant Santia-go–Escobar, Attorney Luis Roberto Santos; defendant Phisco Ramirez, Attorney Jose Romo Matienzo.

After this general background explanation, the jury clerk then testified as to how the venire was selected for this case. Because of the great number of jurors that were needed for a case in which the jury selection process had been going on for over two weeks, there were not enough jurors for a venire of 56, the number necessary to service two criminal cases. The jury clerk, therefore, went to the "dead" file which contained the names of jurors selected at random from the jury wheel who had served as jurors more than two years prior because such jurors could be used again.[3] The jury clerk, however, did not send out summonses to those selected from the "dead" file.[4] Because of the time constraints for augmenting the venire, the clerk called those selected from the "dead" list on the telephone. She asked each one if he/she could serve again as a juror and gave them the date for reporting for duty. Some were willing to come, others refused for various reasons. None of those called were told that they had to serve as a juror. Ten to twelve persons were added to the venire by this method.

The chief deputy clerk of the district court also testified. He emphasized that those persons used to augment the venire had gone through the statutorily required random selection process. He knew that the jury clerk was telephoning jurors who had served more than two years prior and asking them to make themselves available again, and it would appear that he participated in the telephoning.

Immediately after the testimony of the chief deputy clerk and without consulting defense counsel or the prosecutor, the district court declared a mistrial stating:

> Well, this situation is that I feel that I have to agree with Judge Pieras in that the randomness requirement has not been followed in this matter and I think in the back of my mind there is a case from the Fifth Circuit or the Fourth Circuit. I believe it is the Fourth Circuit in which a situation similar to this took place and it was decided that the procedure used was not at random and, therefore, was not according to law. That being the case and in agreement with Judge Pieras, at this time I will declare a mistrial in this case and I will call the jury and dissolve this jury.
>
> I understand that four of the defendants would like to continue with this trial. Two of the defendants do not agree so I will declare a mistrial as to all defendants. Bring the jury.

The jury was then brought in, thanked for their services and discharged.

Five days later, on July 17, there was a hearing on defendants' motions for dismissal of the indictment on double jeopardy grounds. The court denied the motions and refused to grant a stay pending appeal. A new jury was then drawn and a second trial commenced. We stayed the trial pending this appeal.

In its order denying the motions to dismiss the indictment, which is attached as an appendix to this opinion, the court held that "the calling of jurors to appear for service on a voluntary basis was a substantial failure to comply with statutory jury selection procedures." The court found that there was a manifest necessity for a mistrial, "considering, *inter alia*, the interests of judicial economy, (the potential waste of time, energy, and money), and the clear violation of the Jury Selection and Service Act." The court found that there were no practical alternatives to a mistrial and that severance would be impractical.

## II.

We start our analysis with the basics.

---

**3.** 28 U.S.C. § 1866(e) provides:

(e) In any two-year period, no person shall be required to (1) serve or attend court for prospective service as a petit juror for a total of more than thirty days, except when necessary to complete service in a particular case, or (2) serve on more than one grand jury, or (3) serve as both a grand and petit juror.

**4.** 28 U.S.C. § 1866(b) requires that prospective jurors shall be issued summonses, and: "Each person drawn for jury service may be served personally, or by registered, certified, or first-class mail addressed to such person at his usual residence or business address."

The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

\*    \*    \*    \*    \*    \*

Moreover it is not essential that a verdict of guilt or innocence be returned for a defendant to have once been placed in jeopardy so as to bar a second trial on the same charge. This Court, as well as most others, has taken the position that a defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again. *Wade v. Hunter,* 336 U.S. 684 [69 S.Ct. 834, 93 L.Ed. 974]; *Kepner v. United States,* 195 U.S. 100, 128 [24 S.Ct. 797, 804, 49 L.Ed. 114]. *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957); *Brady v. Samaha,* 667 F.2d 224, 227–28 (1st Cir.1981); *see generally United States v. DiFrancesco,* 449 U.S. 117, 126–31, 101 S.Ct. 426, 431–34, 66 L.Ed.2d 328 (1980) (stating general principles of the Court's double jeopardy decisions).

It has long been recognized that a defendant has a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). This right, however, is not absolute; it is subject to the rule of "manifest necessity" which was first stated by the Court in *United States v. Perez,* 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824):

We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner.

In *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971), the Court stated: "the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." In language that applies to the case before us, the Court found that the trial judge did not exercise sound discretion in declaring a mistrial.

It is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so. When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the *sua sponte* declaration of this mistrial.

*Id.* at 487, 91 S.Ct. at 558.

The Court explicitly recognized in *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) that the words "manifest necessity"

do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word "necessity" cannot be inter-

preted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a "high degree" before concluding that a mistrial is appropriate.

*Id.* at 506, 98 S.Ct. at 831 (footnotes omitted).

In *United States v. Pierce*, 593 F.2d 415, 417 (1st Cir.1979), we held that in determining whether there was a manifest necessity for a mistrial, "our first inquiry must be whether the court gave adequate consideration to the existence of any less drastic alternative." We stressed the importance of giving counsel an opportunity to be heard before declaring a mistrial. *Id.* at 419. *See also United States v. Hotz*, 620 F.2d 5, 6 (1st Cir.1980). In *Brady v. Samaha*, 667 F.2d 224, a habeas corpus case, we were faced with a mistrial decision made by the court without consultation with either standby defense counsel or the prosecutor. We stated: "Our duty as a reviewing court is to assure ourselves that the trial judge engaged in a 'scrupulous exercise of judicial discretion' in making the decision that a mistrial was necessary. *United States v. Jorn*, 400 U.S. at 485 [91 S.Ct. at 557]." *Id.* at 228.

### III.

The next step is the application of these well established principles to the facts of the case before us. We start with the appeals of the four defendants who informed the trial court that they wished to continue the trial with the jury that had been selected. The two defendants who opted for a mistrial waived their right to the protection of the double jeopardy clause and their appeals will be discussed *infra.*

The first thing to be noted is that the district judge did not give counsel an opportunity to object or discuss with them the advisability of a mistrial. He declared a mistrial immediately after the testimony on the jury selection process had ended and peremptorily dismissed the jury. It is true

that five days later, after hearing the motions for dismissal of the indictments on grounds of double jeopardy, the Court issued an order finding that there was a manifest necessity for declaring a mistrial. But this was locking the barn door after the horse was stolen. The mistrial was then a *fait accompli.*

The precipitous action of the court in declaring a mistrial is puzzling in light of his statement to counsel prior to the testimony of the jury clerk and deputy clerk: "[I]f you request that this jury be dissolved, I will dissolve it. If you want the jury to continue, then we can continue." The choice that was promised the defendants was denied them.

Evidently the judge decided then, as stated in his five day post hoc order, that the telephone selection of some of the members of the voir dire amounted to a substantial violation of the Jury Act. If this were so, the jury would have to be discharged and a new one selected. 28 U.S.C. § 1867(d).[5] But even so, there would have been a double jeopardy problem because "where a constitutional right comes into conflict with a statutory right, the former prevails." *Gray v. Mississippi*, 481 U.S. 648, 663, 107 S.Ct. 2045, 2054, 95 L.Ed.2d 622 (1987).

We do not agree, however, that there was a substantial violation of the Jury Act. The courts that have confronted the problem caused by a flaw in the random selection process agree that this, without more, does not amount to a violation of the due process right to a jury representing a fair cross section of the community. *See United States v. Gregory*, 730 F.2d 692, 699 (11th Cir.1984), *cert. denied*, 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985); *United States v. Nelson*, 718 F.2d 315, 319 (9th Cir.1983); *United States v. Hawkins*, 566 F.2d 1006, 1014–15 (5th Cir.), *cert. denied*, 439 U.S. 848, 99 S.Ct. 150, 58 L.Ed.2d 151 (1978); *United States v. Kennedy*, 548 F.2d 608, 614 (5th Cir., *cert. denied*, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977).

---

5. 28 U.S.C. § 1867(d) provides in pertinent part: "If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title.

■ The jury clerk here was responding to an emergency situation. The jurors she telephoned had been sifted through the random selection process. The only deviation was that the clerk accepted only those jurors who volunteered their services. There is no doubt that the use of volunteer jurors offends the random selection requirement of the Act. The test, however, for a substantial violation is whether it "either allowed discriminatory selection of jurors or otherwise prevented jury panels from consisting of fair cross sections of the community." *United States v. Bearden*, 659 F.2d 590, 602 (5th Cir.1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). *See also United States v. Nelson*, 718 F.2d at 318–19. In *United States v. Anderson*, 509 F.2d 312 (D.C.Cir.1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975), the court, in language applicable to the situation faced by the jury clerk in this case, upheld the selection of sixty-eight volunteers out of a total of 200 to 300 jurors contacted: "We think a trial judge's discretion in jury selection is broad enough to encompass consideration of adverse consequences which might be suffered by jurors suddenly called to a duty prolonged materially beyond their original expectations." *Id.* at 322 (footnote omitted).

■ In the case at bar there was no showing that any of the ten to twelve jurors selected by telephone for the venire were on the jury panel. In fact, no inquiry was made as to this. Under the facts and the applicable law we find, contrary to the district court, that there was no substantial violation of the Jury Act.[6]

We next consider the alternatives the judge had available and should have considered before declaring a mistrial. It is important to point out that the court had been advised by counsel of a possible dou-ble jeopardy problem prior to its mistrial declaration. The first alternative was obvious, take a recess until the next day so that the problem could be researched and discussed with counsel. Given the court's feeling that a serious transgression of the Jury Act had occurred, some thought should have been given to determining if any of the "tainted" jurors were on the panel. If one or two were, they could have been replaced by alternates. Although the court stated in its order that severance was impractical because the evidence was the same as to all defendants, this did not preclude severance. The trial could have continued as to the four defendants who stated that they wished to continue with the jury already selected. In light of the double jeopardy bar hanging over the case, the cost to the government of two trials was not a compelling reason for denying severance. Nor has any good reason been advanced why the trial could not have continued as to all defendants. The question of whether there had been a substantial violation of the Jury Act could have been appealed in due course.

■ Considering all of the circumstances we find that there was no manifest necessity for the mistrial and that the district court in declaring a mistrial failed to exercise the sound discretion required under the case law. We hold, therefore, that the double jeopardy proscription of the fifth amendment requires that the indictments against defendants Vanegas–Ortiz, Cardales–Barrios, Santiago–Escobar and Phisco Ramirez be dismissed and that they be discharged.

## IV.

The law is clear that, absent prosecutorial or judicial goading or bad faith, where a defendant's request for a mistrial is granted, the right to the protection of the double

---

6. If the district court's concerns can be interpreted to reflect the fear that the process was tainted because excusals were granted by the deputy clerk rather than by a judge, the same result obtains. *See generally United States v. Maskeny*, 609 F.2d 183, 193 (5th Cir.), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980); *United States v. Evans*, 526 F.2d 701, 706 (5th Cir.), *cert. denied*, 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1976); *United States v. Marrapese*, 610 F.Supp. 991, 1000–02 (D.R.I. 1985), *aff'd*, 826 F.2d 145 (1st Cir.), *cert. denied*, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); *United States v. Layton*, 519 F.Supp. 946, 953–54 (N.D.Cal.1981); *United States v. Huber*, 457 F.Supp. 1221, 1231 (S.D.N.Y.1978).

jeopardy clause is forfeited. *See Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982); *United States v. Scott,* 437 U.S. 82, 93–94, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978); *Lee v. United States,* 432 U.S. 23, 32–33, 97 S.Ct. 2141, 2146–47, 53 L.Ed.2d 80 (1977); *United States v. Dinitz,* 424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976); *United States v. LaRouche Campaign,* 866 F.2d 512, 514 (1st Cir.1989); *Sundel v. Justices of Super. Court of State of R.I.,* 728 F.2d 40 (1st Cir.), *cert. denied,* 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984); *United States v. Zozlio,* 617 F.2d 314 (1st Cir. 1980).

█ Defendants Piedrahita–Santiago and Pelaez–Escobar opted for a mistrial after consultation with counsel. Their request was granted. They have advanced no plausible reason to avoid the strictures of the rule. The double jeopardy prohibition, therefore, does not apply to them.

SO ORDERED

APPENDIX

ADDENDUM

In the United States District Court for the Distrit of Puerto Rico

United States of America,

v.

Roberto Piedrahita, et al.

CR. No. 89–0144 GG

July 17, 1989

ORDER

Last week, after the jury had been sworn in and some testimony been adduced, the U.S. Attorney brought to the court's attention that the jury clerk had engaged in practices which violated the randomness required of juror selection, in that some of the empaneled jurors had been called by telephone and invited to appear for service on a voluntary basis. The defendants were given ample time to consult with their attorneys regarding this matter. After consultation, two of the defendants moved for a mistrial and four indicated that they wanted to continue with the trial of the case with the jury as selected. Pending before us is defendants' motion to dismiss the indictment based on an alleged violation of the Double Jeopardy Clause of the Constitution.

The Sixth Amendment to the United States Constitution guarantees that a defendant be tried by a jury made up of a fair cross-section of the community. The Jury Selection and Service Act of 1968 codifies and implements the sixth amendment's fair cross-section requirement. The Act requires that each judicial district devise, through the use of voter registration lists or lists of actual voters, a plan for randomly selecting jurors. 28 U.S.C. § 1861. Here, the calling of jurors to appear for service on a voluntary basis was a substantial failure to comply with statutory jury selection procedures. *United States v. Kennedy,* 548 F.2d 608 (5th Cir.1977). Moreover, prejudice need not be shown in order to establish a "substantial failure to comply" with the Act. *Id.* at 612. As a result, we found a manifest necessity to declare a mistrial since no practical alternatives existed at the time. *See United States v. Jorn,* 400 U.S. 470, 486–87, 91 S.Ct. 547, 557–58, 27 L.Ed.2d 543 (1971).

We recognize a defendant's right to have his trial completed by the particular tribunal summoned to sit in judgment on him. *See United States v. Dinitz,* 424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976). Nevertheless, in balancing the defendant's right against the public's interest in convicting persons who violate the criminal laws, retrial is permitted after the declaration of a mistrial if "taking all the circumstances into consideration, there is a manifest necessity for the [mistrial declaration], or the ends of public justice would otherwise be defeated." *United States v. Pérez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed.

165 (1824). In the instant case, manifest necessity existed for an early mistrial, considering, *inter alia*, the interests of judicial economy, (the potential waste of time, energy, and money), *see Illinois v. Somerville*, 410 U.S. 458, 468–69, 93 S.Ct. 1066, 1072–73, 35 L.Ed.2d 425 (1973), and the clear violation of the Jury Selection and Service Act. We note that this case involves a one count indictment in which all six defendants were arrested on the high seas aboard a vessel containing more than four thousand kilograms of marijuana. Defendants have been charged with aiding and abetting, which is analogous to conspiracy, thus making severance impractical since the evidence is the same as to each defendant. Therefore, defendants' motions for dismissal are hereby DENIED, since retrial under the present circumstances is not prohibited by the Double Jeopardy Clause.

After this order was read in open court, defendants moved that the case be stayed pending an interlocutory appeal to the court of appeals. We denied the motions, finding them frivolous. *See, e.g., Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir.), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980).

SO ORDERED.

San Juan, Puerto Rico, this 17th day of July, 1989.

Gilberto Gierbolini
GILBERTO GIERBOLINI
U.S. District Judge