UNITED STATES of America

v.

Robyn DIPIETRO.

Crim. A. No. 89–243–C.

United States District Court,
D. Massachusetts.

June 29, 1990.

Cerise Lim–Epstein, Boston, Mass., for the U.S.

Marie Buckley, Boston, Mass., for DiPietro.

MEMORANDUM

CAFFREY, Senior District Judge.

This action is now before the Court on defendant Robyn DiPietro's motion to dismiss the indictment against her. The indictment in this case charged the defendant with credit card fraud. Trial of the defendant on this indictment commenced on February 20, 1990. The following morning, both counsel gave closing arguments and the government argued in rebuttal, after which the Court recessed. After careful deliberation and weighing of alternatives during the recess, this Court declared a mistrial *sua sponte* because of improper argument by the government in its rebuttal. The defendant now argues that the indictment against her should be dismissed because further prosecution would violate her right not to be twice placed in jeopardy for the same offense under the Fifth Amendment of the United States Constitution. For the reasons stated below, this Court concludes that the double jeopardy clause does not bar retrial of the defendant under the circumstances in this case. Accordingly, defendant's motion to dismiss should be denied.

I.

For the purpose of this motion, the relevant facts are as follows. The defendant was charged in a one-count indictment with credit card fraud and aiding and abetting others to commit credit card fraud, in violation of 18 U.S.C. § 1029(a)(2).[1] On February 20, 1990, the jury was empaneled, and the trial commenced. The government rested on February 21, 1990. The defendant moved for a judgment of acquittal, arguing that the government had introduced no evidence to prove that the credit cards in question were "unauthorized access cards," that is, "lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." 18 U.S.C. § 1029(e)(3). The defendant argued that the statutory language "obtained with intent to defraud" referred to the obtainment of the credit cards from the issuing credit card company

---

1. Title 18, United States Code, section 1029(a)(2) provides: "(a) Whoever— ... (2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period ... shall, if the offense affects interstate or foreign commerce, be punished...." 18 U.S.C. § 1029(a)(2). Under the statute, the term "unauthorized access device" is defined as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." 18 U.S.C. § 1029(e)(3).

with an intent to defraud the company. This Court rejected the defendant's interpretation, and finding that there was sufficient evidence that these cards were obtained with intent to defraud, denied her motion for judgment of acquittal. *See United States v. Jacobowitz*, 877 F.2d 162, 166–67 (2d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989).

Thereafter, the government and the defendant both made closing arguments. In its closing, the government made little reference to the requirement that the credit cards be "unauthorized." The defendant's argument, however, focused on this element of the offense. The defendant argued that the government had not proven that these credit cards were "unauthorized." Specifically, the defendant argued that no evidence was produced to show that these cards were originally obtained from the issuers by the cardholders with the intent to defraud.

In an attempt to rebut the closing argument of the defendant, the government committed an error in its rebuttal argument. The government impermissibly argued that the pleas and convictions of witnesses who had committed the identical crime with which the defendant was charged were evidence of the defendant's guilt. As the government stated:

Now, think about it. Debra Lenz was convicted of that identical crime that she, Robyn DiPietro, is charged with—a violation of Section 1029. Eric Sedari was convicted of that identical crime that Robyn DiPietro was charged with—a violation of section 1029. Now, if, in fact, it is true what counsel has said to you, which is that an element of the case has to be that the credit card was unauthorized or obtained with intent to defraud, haven't Debra Lenz and Eric Sedari by their conviction, hasn't it been proved beyond a reasonable doubt.

\* \* \* \* \* \*

If that is the case, . . . then by their own conviction, by their plea of guilty, they have admitted all the essential elements of the crime. In other words, Debra Lenz and Eric Sedari have admitted in their plea of guilty, which resulted in their conviction, that, No. 1, a credit card is an access device. . . . And, according to defense counsel, there is element No. 5, which is that the card was obtained with intent to defraud, in order for it to be unauthorized. Well, I submit to you by the plea of guilty they have admitted that fifth element, if, in fact, it is an element.

Despite two objections from defense counsel, this Court allowed the government to continue its impermissible argument. Not until the defense counsel requested that the Court give a special instruction to the jury because of the government's argument, did the Court realize the seriousness of the government's error, an error which the Court allowed the government to repeat throughout its rebuttal.

After the conference at sidebar regarding the special instruction, the Court recessed for lunch. During the recess, however, the Court considered the nature and extent of the government's error, the severe prejudice to the defendant, and possible curative instructions which might be given to remedy the error. After the recess, the Court called counsel and the court reporter into the lobby and had the court reporter read back the government's rebuttal argument. The Court wanted to be certain of the nature and extent of the error before taking any action. After the reading, both counsel left the lobby without comment. The Court assumed that at this point both counsel knew the Court was considering a mistrial. After deliberating for awhile longer, the Court decided that it was necessary to declare a mistrial because of the severe prejudice to the defendant caused by the government's highly improper argument which, in the opinion of the Court, could not be erased from the minds of the jurors or cured by any instruction.

After declaring a mistrial and excusing the jury, the Court spoke to counsel at sidebar. The Court explained to the government its error and that "the curative instruction wouldn't have cured the way [it] argued the case." At this time, defense counsel registered no objection to the

Court's declaration of a mistrial. Defense counsel, in fact, said nothing about the mistrial, but simply renewed the defendant's motion for judgment of acquittal which this Court again denied.

The defendant now argues that the indictment against her should be dismissed because the double jeopardy clause of the fifth amendment protects her from reprosecution for the same offense. For the following reasons, the double jeopardy clause does not bar retrial of the defendant in this case, and thus, her motion to dismiss should be denied.

## II.

The double jeopardy clause of the fifth amendment commands that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb" and thus protects a criminal defendant from repeated prosecutions for the same offense. U.S. CONST. amend. V. *See Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978); *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). A criminal defendant also enjoys "the valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). The policy underlying the prohibition against double jeopardy "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him [or her] to embarrassment, expense and ordeal and compelling him [or her] to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he [or she] may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). A criminal defendant is placed in jeopardy once he or she is put to trial before a jury. *Jorn*, 400 U.S. at 479, 91 S.Ct. at 554; *Green*, 355 U.S. at 188, 78 S.Ct. at 223; *Wade*, 336 U.S. at 688, 69 S.Ct. at 836.

The double jeopardy clause, however, does not mandate an absolute rule prohibiting retrial and allowing the defendant to go free whenever circumstances compel the termination of a criminal proceeding and the discharge of the jury prior to verdict without the defendant's consent. *Arizona*, 434 U.S. at 505, 98 S.Ct. at 830; *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973); *Wade*, 336 U.S. at 688, 69 S.Ct. at 836. "Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed." *Wade*, 336 U.S. at 688–89, 69 S.Ct. at 836–37. Because a criminal trial is a complicated affair during which unforeseeable circumstances often arise and inadvertent errors are committed which may warrant a mistrial, "a mechanical rule prohibiting retrial whenever circumstances compel the discharge of the jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a rule would provide." *Jorn*, 400 U.S. at 479–80, 91 S.Ct. at 554–55; *Arizona*, 434 U.S. at 505, 510, 98 S.Ct. at 830, 832. Accordingly, "a defendant's valued right to have his trial completed by a particular tribunal must in some circumstances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade*, 336 U.S. at 689, 69 S.Ct. at 837; *see Illinois*, 410 U.S. at 463, 93 S.Ct. at 1070.

In deciding whether to discontinue a criminal trial prior to verdict, courts are guided by the doctrine of "manifest necessity" first articulated by the Supreme Court in *United States v. Perez*, 22 U.S. 579, 579, 6 L.Ed. 165 (1824). As the Supreme Court in *Perez* stated,

We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible

to define all the circumstances, which would render it proper to interfere. 22 U.S. at 579. Where the defendant has not requested a mistrial, "the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Jorn*, 400 U.S. at 485, 91 S.Ct. at 557. "Manifest necessity" means a "high degree" of necessity, and its existence will depend upon the problem at trial which prompts the judge to declare a mistrial. *Arizona*, 434 U.S. at 506, 98 S.Ct. at 830; *Brady v. Samaha*, 667 F.2d 224, 228 (1st Cir.1981). Accordingly, under this doctrine of "manifest necessity," reprosecution is not prohibited where a court, after a scrupulous exercise of sound discretion, declares a mistrial because of manifest necessity or because the ends of public justice would otherwise be defeated. *See Perez*, 22 U.S. at 579–581; *Illinois*, 410 U.S. at 463, 93 S.Ct. at 1070.

The trial judge is in the best position to decide whether the public interest in fair trials and just judgments requires a mistrial in a particular case, particularly where the reason for the mistrial is improper and highly prejudicial argument to the jury. *Arizona*, 434 U.S. at 513–15, 98 S.Ct. at 834–35. The trial judge is in the best position to assess the impact of the improper argument on the minds of the jury. *Id.* at 515, 98 S.Ct. at 835. "He [or she] is the judge most familiar with the evidence and the background of the case on trial. He [or she] has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he [or she] is 'conversant with the factors relevant to the determination'...." *Id.* at 514, 98 S.Ct. at 834 (quoting *Wade*, 336 U.S. at 689, 69 S.Ct. at 837). Yet, a trial judge's decision that a mistrial is manifestly necessary must be the product of a scrupulous exercise of sound discretion. *See Perez*, 22 U.S. at 579; *Jorn*, 400 U.S. at 485, 91 S.Ct. at 557.

"A scrupulous exercise of sound discretion" obviously does not mean "a precipitate decision, reflected by a rapid sequence of events culminating in a declaration of mistrial." *Brady*, 667 F.2d at 229. *See Jorn*, 400 U.S. at 487, 91 S.Ct. at 558; *United States v. Ramirez*, 884 F.2d 1524, 1529 (1st Cir.1989). Rather, in exercising such discretion, the trial judge should devote much thought to the decision of whether a mistrial is manifestly necessary under the particular circumstances of a case. *Brady*, 667 F.2d at 229; *see Arizona*, 434 U.S. at 515–16, 98 S.Ct. at 835–36; *United States v. Hotz*, 620 F.2d 5, 7 (1st Cir.1980). The court should carefully consider less drastic alternatives to a mistrial. *Ramirez*, 884 F.2d at 1529; *Brady*, 667 F.2d at 229. Also, affording counsel an opportunity to be heard may assist the court in making its decision. *Ramirez*, 884 F.2d at 1529; *Brady*, 667 F.2d at 229; *Hotz*, 620 F.2d at 7; *United States v. Pierce*, 593 F.2d 415, 419 (1st Cir.1979). Furthermore, "[a] trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." *Illinois*, 410 U.S. at 464, 93 S.Ct. at 1070. As the Supreme Court has stated, "[i]f an error would make reversal on appeal a certainty, it would not serve 'the ends of public justice'" to continue with the proceedings. *Id.*

Accordingly, guided by these principles, a court must exercise sound discretion in deciding whether to declare a mistrial. Keeping in mind both the defendant's right against double jeopardy and the public's interest in the prosecution of criminals through fair trials designed to end in just judgments, a court must only declare a mistrial where manifestly necessary.

### III.

This Court engaged in careful deliberation before declaring a mistrial in this case because of the government's improper argument to the jury. This Court devoted the entire luncheon recess to consideration of the nature and extent of the government's error, the necessity for a mistrial,

and other alternatives to a mistrial. This Court continued its deliberations on this decision upon returning to the courtroom. Recognizing the seriousness of the decision, this Court listened to the government's argument again to fully appreciate the nature and extent of the government's error. After hearing the improper argument a second time and after further consideration, this Court concluded that it was manifestly necessary to declare a mistrial under the circumstances of this trial. Having given such time and thought to its decision, this Court clearly did not act precipitately in declaring the mistrial.

In reaching its decision to declare a mistrial, this Court gave much consideration to the alternative of giving a special curative instruction to the jury. Given the nature of the government's improper argument— that convictions of other persons of the same crime proved the guilt of the defendant—this Court did not believe that any instruction the Court could give could erase the prejudice from the minds of the jurors and cure the error. *Accord United States v. Miranda*, 593 F.2d 590, 595 (5th Cir. 1979). The argument was extremely prejudicial to the defendant and its impact on the jury was great. Further, the extent of the error also influenced this Court to reject the possibility of a curative instruction. The government repeated the error throughout its rebuttal before the Court fully appreciated its impropriety. Accordingly, the nature and extent of the error, its impact on the jury, and its severe prejudicial effect led this Court to its conclusion that a special instruction would not cure the error and that declaration of a mistrial was necessary.

Moreover, although this Court was convinced that the jury could not arrive at an impartial verdict after hearing the government's improper argument, even if the jury could have reached a verdict of conviction, on appeal that conviction would have had to be reversed due to the obvious error committed by the government. *See Miranda*, 593 F.2d at 598. *See also Illinois*, 410 U.S.

at 464, 93 S.Ct. at 1070. Thus, the ends of public justice would not have been served by continuing the trial because the serious error committed by the government made reversal on appeal almost a certainty. *See Illinois*, 410 U.S. at 464, 93 S.Ct. at 1070. A trial judge's declaration of a mistrial under these circumstances has been noted by the Supreme Court as a proper exercise of his discretion to declare a mistrial. *Id.* As the Supreme Court has stated,

> where the declaration of a mistrial ... aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice.

*Id.* at 471, 93 S.Ct. at 1074.

Nevertheless, Defense counsel contends that the mistrial was not manifestly necessary and that the Court did not exercise sound discretion before declaring the mistrial. Defense counsel erroneously argues that this Court did not consider other alternatives. Prior to the recess, however, defense counsel had requested a curative instruction because of the improper argument, and this Court carefully considered that alternative before rejecting it.[2] Moreover, although mute at the time of trial, defense counsel now argues that this Court did not give her an opportunity to be heard. Yet, when this Court relistened to the government's improper argument in the lobby, both counsel were present. Neither during, nor after the court reporter's reading of the argument, however, did the government or the defense counsel make any comment. The fact that this Court was contemplating a mistrial was obvious at that point. Even if it was not obvious to defense counsel at that point, defense counsel again had no comment after the mistrial was declared. Thus, defense counsel's contention that this Court did not exercise sound discretion in declaring the mistrial is unfounded.

---

**2.** While explaining the reason for the mistrial to counsel, the Court stated: "the curative instruc-

tion wouldn't have cured the way [the government] argued the case."

As the record shows, this Court did engage in careful deliberation before reaching its decision to declare a mistrial. After considering the alternatives and giving much time and thought to the decision, however, this Court became convinced that a mistrial was manifestly necessary because of the nature of the error, its extent, and its prejudicial impact on the jury which could not otherwise be erased. Accordingly, the double jeopardy clause does not bar reprosecution of the defendant on this indictment, and the defendant's motion to dismiss should be denied.

Order accordingly.