Maria R. NAVARRO de COSME, et al.,
Plaintiffs, Appellants,

v.

HOSPITAL PAVIA, et al.,
Defendants, Appellees.

Nos. 89–2020, 89–2102.

United States Court of Appeals,
First Circuit.

Heard Aug. 3, 1990.

Decided Jan. 11, 1991.

David Efron Rio Piedras, P.R., with whom Alfonso Miranda Cardenas, San Juan, P.R., was on brief, for plaintiffs, appellants.

Francisco A. Besosa with whom Goldman Antonetti Ferraiuoli Axtmayer & Hertell, Santurce, P.R., was on brief, for defendant, appellee, Jose Diaz Carazo, M.D.

Jorge E. Galva with whom Ramirez, Latimer & Biaggi, Santurce, P.R., was on brief, for defendant, appellee, Hosp. Pavia, Inc.

Before SELYA and CYR, Circuit Judges, and Re,[*] Judge.

RE, Chief Judge.

Plaintiffs-appellants, Maria R. Navarro de Cosme and her husband, Rafael A. Cosme (the Cosmes), brought this action in negligence against defendants-appellees, Hospital Pavia, Inc. and Dr. Jose Diaz Carazo, in the United States District Court for the District of Puerto Rico, alleging that Mrs. Cosme was negligently treated for a condition she developed while in her ninth month of pregnancy, and that the negligence resulted in the death of the fetus. After trial, the jury returned a verdict for the appellees and judgment was entered in their favor. On this appeal, the Cosmes attack that judgment claiming, among other contentions, that they were prejudiced by the district court's alleged bias.

Several questions are presented on this appeal: first, whether having declared a mistrial in a first trial was an abuse of discretion by the district court; second, whether it was error to impose certain discovery costs on both parties after the mistrial but before the commencement of the second trial; third, whether it was error to exclude photographs of the fetus or the testimony of two of the Cosmes' expert witnesses and to permit extensive cross-examination of another of the Cosmes' expert witnesses, or to admit into evidence the records of a social worker who testified on behalf of the Hospital and Dr. Diaz Carazo; and fourth, whether these adverse rulings, and the manner in which the district judge conducted the trial, deprived the Cosmes of the right to a fair trial by an impartial judge.

Since we conclude that the district court committed no reversible error, and that there is no rational basis for a charge of bias, the judgment of the district court is affirmed.

## BACKGROUND

On March 27, 1987, at 4:00 p.m. appellant Maria R. Navarro de Cosme, while in her ninth month of pregnancy, experienced pain in her chest and went to Hospital Pavia for treatment. At the Hospital, Mrs. Cosme was seen by the Hospital's emergency room physician, and by her gynecologist, Dr. Jose Diaz Carazo. She was diagnosed as suffering from an inflammation of the cartilage joining the ribs to the sternum, was treated with oral analgesics, and was discharged. Mrs. Cosme returned at midnight, still complaining of pain, and was given an injection of demerol in accordance with an order of Dr. Diaz Carazo given over the telephone. On March 28, 1987, the fetus died, and on April 4, 1987, was delivered stillborn.

On February 26, 1988, the Cosmes filed suit claiming that the death of the fetus

[*] The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

was caused by negligence on the part of Hospital Pavia and Dr. Diaz Carazo. The Hospital and Dr. Diaz Carazo denied negligence, and defended on the grounds that the death of the fetus was caused by a deprivation of oxygen, which was not caused by the treatment Mrs. Cosme received. The Hospital and Dr. Diaz Carazo assert that the lack of oxygen was caused both by the strangulation of the fetus by the umbilical cord and the compression of the fetus in Mrs. Cosme's womb. Judgment was entered in favor of Hospital Pavia and Dr. Diaz Carazo after a verdict was returned in their favor.

## DISCUSSION

A. The Mistrial.

On July 12, 1989, a trial in this case began and the jury was given preliminary instructions by the court. ·The jury also heard opening statements made on behalf of the Cosmes and Dr. Diaz Carazo, as well as testimony from Mrs. Cosme.

On July 13, 1989, before the second day of the trial, the court informed counsel that the jury may have been improperly convened, as "two of the jurors that are actually serving on this jury were called by the clerk's office to serve, even though they had served their 30–day period required by the rules of this Court under our jury selection plan."

The court then heard the testimony of Juan M. Masini–Soler, the Clerk of the United States District Court for the District of Puerto Rico, and Myra Marrero, an employee of the Clerk's office. The witnesses explained that, due to a criminal trial being held in the courthouse, there was a shortage of potential jurors. Hence, they stated that the Clerk's office asked some jurors, who had completed their thirty day service, to volunteer for continued service. In addition, the court questioned Rosa Lopez, a juror. Ms. Lopez testified that, although she had previously served a thirty day period, she was called by telephone and invited to serve. Ms. Lopez testified that other members of the jury venire had similarly been invited. After

hearing the testimony of Ms. Lopez, the district court ordered a mistrial.

The Cosmes argue that the court's declaration of a mistrial was an abuse of its discretion.

■ We note that in a civil case, the remedy for a wrongfully declared mistrial is a second trial. Here, the Cosmes subsequently received a second trial. However, since the Cosmes claim the mistrial was an instance of alleged bias by the district court, their claim is not rendered moot for lack of a remedy, and we must review the facts and circumstances to determine whether there is any indication of bias on the part of the district court.

■ A review of the transcript of the proceedings of July 13, 1989, provides no support for the Cosmes' claim of bias. The court informed counsel for the parties of the problem with the jury, and gave counsel for the parties an opportunity to consult with each other and then comment to the court. The court also elicited testimony from Mr. Masini–Soler and Ms. Marrero, and from the juror, Ms. Lopez. It was only after Ms. Lopez indicated that she had been invited to serve on the jury venire that the court ordered a mistrial. Finally, we note that counsel for the Cosmes failed to object to the court's order.

Hence, we conclude that the district court's order of a mistrial does not indicate any bias or prejudice on the part of the court. We also note that, since our analysis here is limited to a determination of whether the district court showed bias or prejudice, our conclusion is not contrary to the decision in *United States v. Ramirez*, 884 F.2d 1524 (1st Cir.1989). In *Ramirez*, a criminal case involving the same jury venire as the one in this case, we concluded that the United States District Court for the District of Puerto Rico erred in ordering a mistrial over defendants' objection, on July 12, 1989, and dismissed the indictments against certain of the defendants under the double jeopardy provision of the fifth amendment. *See id.* at 1530. *See also United States v. Victoria–Peguero*, 920 F.2d 77, 85–86 (1st Cir.1990).

## B. Discovery

Prior to trial, on October 13, 1988, the Hospital moved for the exclusion of the testimony of the Cosmes' expert witness, Dr. Bernard Nathanson. The Hospital contended that counsel for the Cosmes had repeatedly failed to produce Dr. Nathanson for deposition, as required by court order. On January 12, 1989, the court issued an order stating that "there being no opposition and there being a failure to make the witness available for deposition as agreed the motion is granted."

After the mistrial was declared, counsel for the Cosmes made an oral motion to permit the testimony of Dr. Nathanson. The court, however, required that Dr. Nathanson and two of the Cosmes' other expert witnesses be deposed prior to trial. The court ordered that:

> Unless you people can agree to something different without my intervention, this is the way it is going to be done, and it will be done before August 30th. A date must be agreed to for these physicians or experts between counsel. And if you do not agree, I will then select a date which may not be suitable to either side. Okay, to be taken before August 30th, and it is going to include the following proviso:
>
> The insurance company or Dr. Diaz Carazo or hospital, whomever, counsel, are responsible to pay the hotel and airfare of one of the lawyers of the plaintiffs' for the taking of those two deposition[s].
>
> Number two: I will allow ... Dr. Nathanson to be considered as an expert in this case with one condition. He will be made available for deposition in Puerto Rico before August 30th.

When counsel for the Cosmes replied that Dr. Nathanson could not be in Puerto Rico before August 30, the court permitted the deposition to be taken in New York. The court stated to counsel for the Cosmes: "Okay, in New York City, but then the same applies to you people. You will have to pay the hotel bill and the airline tickets for one lawyer per defendant, ... because there are two parties."

It cannot be questioned that a trial court enjoys considerable latitude in managing pretrial matters. Appellate intervention in discovery is warranted only upon a clear showing of "manifest injustice." *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 186 (1st Cir.1989). To establish manifest injustice, the party opposing the trial court's discovery order must show that the order "was plainly wrong and resulted in substantial prejudice to the aggrieved party." *Id. See also In re Recticel Foam Corp.*, 859 F.2d 1000, 1006 (1st Cir.1988).

The district court's allocation of expenses clearly falls within the broad discretion of the trial court in managing pretrial discovery. Having each party pay for adversaries' expenses in connection with the taking of depositions is a common practice where circumstances warrant, and is not "plainly wrong." Consequently, the Cosmes have failed to make a showing of manifest injustice, and have not shown an abuse of discretion.

## C. Evidentiary Rulings

### 1. *The Photographs*

The Cosmes' first contention under this rubric is that the district court erroneously excluded photographs of the Cosmes' stillborn fetus. The Cosmes requested that the photographs be admitted into evidence in order to prove that the death of the fetus was not caused by the umbilical cord wrapping around its neck, as contended by Dr. Raul Marcial Rojas, who testified on behalf of the Hospital and Dr. Diaz Carazo.

The photographs in issue were taken after the stillbirth. According to the Hospital and Dr. Diaz Carazo, the photographs were taken just before the autopsy was performed, and when the fetus was already macerated and had begun to decompose.

Stating that the photographs were inflammatory, on October 26, 1988, the court granted the motion in limine, of the Hospital and Dr. Diaz Carazo, to exclude the photographs. At trial, counsel for the Cosmes again sought to introduce the photographs into evidence. The court, in rul-

ing the photographs inadmissible, stated that:

> The photos are gruesome. The photos are, in my own estimation ... insensible [and] I will not admit them in this Court.... [I]f I live to be 90 years old I will never forget those photos. And I am not going to show them to the jury.

Under the Federal Rules of Evidence, photographs are generally admissible, upon a proper foundation. Photographs may be excluded, however, as any other competent evidence, if their "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

Upon a review of the transcript, it is clear that the district court was of the opinion that the photographs would have a serious impact on the jury, and would unfairly prejudice the Hospital and Dr. Diaz Carazo. Although the court did not state explicitly that the prejudicial value of the photographs outweighed their probative value, it is understood that in Rule 403 decisions "explicit findings need not always be made." *United States v. De La Cruz*, 902 F.2d 121, 123 (1st Cir.1990).

Furthermore, we note that the Cosmes were able to present other evidence in support of their argument that the umbilical cord did not cause the death of the fetus. Two of the Cosmes' experts, Dr. Angel Roman Franco and Dr. Juan Hernandez Cibes, testified that the death of the fetus was not caused by the umbilical cord.

Hence, the district court did not abuse its discretion in excluding the photographs.

### 2. *Exclusion of the Cosmes' Expert Witnesses*

The Cosmes claim that the district court erred in excluding the testimony of Sister Jane Marie Lamb, a Franciscan nun who was offered as an expert "grief counselor," and the deposition of Dr. Sergio Cascardo, Mr. Cosme's urologist. The proposed testimony of both witnesses pertained solely to the damages suffered by the Cosmes. Sis-

ter Jane Marie was to testify as to the grief suffered by the Cosmes as a result of losing the fetus, and, in his deposition, Dr. Cascardo testified as to Mr. Cosme's condition of sterility, and his consequent inability to father future children.

■ In rendering its verdict against the Cosmes, the jury did not pass on the issue of the Cosmes' damages. Hence, the court's exclusion of the Cosmes' witnesses on the issue of damages cannot constitute reversible error. *See Fernberg v. T.F. Boyle Transp. Inc.*, 889 F.2d 1205, 1209 n. 6 (1st Cir.1989). Nevertheless, since these exclusions are also submitted as another instance of alleged bias, we will consider whether the district court committed error in excluding the proffered testimony of Sister Jane Marie and Dr. Cascardo.

Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Furthermore, under Federal Rule of Evidence 705, an expert witness "may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data...." It is clear that "[t]he admission of expert testimony under Federal Rule of Evidence 702 is within the discretion of the district court and will be reversed only for an abuse of discretion." *Forrestal v. Magendantz*, 848 F.2d 303, 305 (1st Cir.1988).

■ On voir dire, Sister Jane Marie testified that she had met the Cosmes on only two occasions. Sister Jane Marie also stated that she first met the Cosmes in July, 1989, more than two years after the death of the fetus. In response to questioning, Sister Jane Marie admitted that she could not testify as to the grief experienced by the Cosmes in 1987, immediately after the death of the fetus, since she stated that she

did "not know enough about them individually and their grief response."

The Cosmes claim that, despite Sister Jane Marie's lack of specific knowledge about them, she nonetheless should have been allowed to testify and respond to hypothetical questions.

It is evident, however, that in excluding Sister Jane Marie's testimony, the district court recognized this possibility. The court excluded Sister Jane Marie's testimony on the basis of the danger of unfair prejudice, as provided in Rule 403. The court stated that, as the proposed testimony of Sister Jane Marie relates to the Cosmes:

> I am afraid that Rule 403 tells me, and that is my ruling, at this moment, that the danger of prejudice, of it being too broad, too general, too technical, too, perhaps, scientific, is just too much of a ... danger, in light of the probative effect it may have in the context of this case.

On this record, we conclude that the district court did not abuse its discretion in excluding the testimony of Sister Jane Marie.

■ In arguing for the exclusion of the deposition of Dr. Cascardo, counsel for Dr. Diaz Carazo stated that Dr. Diaz Carazo would be prejudiced by the lack of Mr. Cosme's medical records. Counsel for Dr. Diaz Carazo explained that the medical records had not been produced at the deposition, which was taken at Dr. Cascardo's office. The court stated that:

> There is no excuse for the nonproduction of that record.... The order is that counsel [for the Cosmes] get ... together with your client [Mr. Cosme], and you are going to get his authorization, and there is no reason why Dr. Cascardo is going to deny those records under those circumstances.... [W]hat [counsel for Dr. Diaz Carazo] is proposing is a fair shake. I am allowing the deposition. Give him the record.

Two weeks later, when counsel for the Cosmes still failed to produce the medical records, the court excluded the deposition.

It is basic that when a party fails to cooperate with a discovery order of the district court, the district court "may make such orders in regard to the failure as are just, and among others the following: ... [a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence...." Fed.R.Civ.P. 37(b)(2)(B). Under Rule 37(b)(2), the district court has "a broad discretion to make whatever disposition is just in the light of the facts of the particular case." 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2289 (1970). *See also Marquis Theatre Corp. v. Condado Mini Cinema*, 846 F.2d 86, 90 (1st Cir.1988).

In this case, the record indicates that the district court provided counsel for the Cosmes with adequate opportunity to produce the medical records. Hence, we find that the district court did not abuse its discretion in excluding the deposition of Dr. Cascardo.

### 3. *Cross–Examination of Dr. Hernandez Cibes*

■ The Cosmes argue that the district court showed bias in its rulings on the scope of the questioning permitted during the qualification of their expert witness, Dr. Juan Hernandez Cibes.

In its cross-examination of Dr. Hernandez Cibes, for purposes of qualification, counsel for the Hospital questioned Dr. Cibes about another case, in which Dr. Cibes testified under oath that he had submitted an inflated invoice for fees earned as an expert witness. Counsel for Dr. Diaz Carazo also questioned Dr. Hernandez Cibes about the suspension of his license as a notary for failure to submit the required reports, and about the fact that he had been a defendant in three medical malpractice cases.

In permitting the cross-examination of Dr. Hernandez Cibes, the court directed certain comments to counsel for the Cosmes. The court stated that:

> An expert is a person who, due to his training, due to his education, due to his standing in the community, is allowed to come before a court and based upon that

privilege, so to say, is allowed to give an opinion on something after the fact.... The person under those circumstances has to come to court and has to submit to the rigor of qualifications which includes not only the technical aspects; he could be the person who wrote the books on gynecology and obstetrics, but also on ... his standing in the community and his performance as a physician, ... all the things that we have been discussing here. I think that these lawyers on the defense side are more than entitled to cover these areas.

.　　.　　.　　.　　.

Under Federal Rule of Evidence 608(b), on cross-examination, for purposes of attacking or supporting the witness' credibility, inquiry may be made into specific instances of conduct by a witness. The district court has wide discretion under Rule 608(b). *See United States v. Mateos–Sanchez*, 864 F.2d 232, 236 (1st Cir.1988).

In this case, it is clear that the matters under inquiry on the cross-examination of Dr. Hernandez Cibes all pertained to his credibility as a witness. Hence, the district court did not err in permitting the cross-examination of Dr. Hernandez Cibes, and there is no indication of bias.

### 4. *Admissibility of Social Worker's Records*

▆▆ The Cosmes also contend that certain evidentiary rulings in favor of Dr. Diaz Carazo and the Hospital manifest the court's bias. Specifically, the Cosmes refer to the admission into evidence of the records of a social worker, and contend that the records were "not part of the medical records exception to hearsay, particularly in the absence of a qualified expert or the maker of the records to identify the same." The transcript, however, indicates that at trial the Cosmes only objected to the admission into evidence of the social worker's notes, which were written on the medical records of Mr. Cosme.

Federal Rule of Evidence 803(4) provides that statements made for purposes of medical diagnosis or treatment are admissible as exceptions to the hearsay rule. It has

been noted that "[b]ecause the declarant's motive to promote treatment or diagnosis is the factor crucial to reliability, Rule 803(4) does not require the statement to be made to a physician." 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(4)[01] (1990).

In this case, the evidence at trial indicates that the comments were entered to record statements made by Mr. Cosme for the purpose of obtaining treatment. Hence, we find no error in the district court's admission of the disputed records.

### 5. *Other Evidentiary Objections*

Interspersed throughout their brief the Cosmes present various other objections to the evidentiary rulings made by the district court. We have reviewed all of these arguments, and have concluded that they are without merit.

### D. Bias.

Finally, the Cosmes contend that the adverse rulings on the various claims that have been made, as well as the court's comments and conduct at the trial, reflected and manifested bias which prejudiced their case. This final effort to attack the judgment is a serious charge that is unsupported by the record and is unfounded.

It is not questioned that bias and improper conduct by a trial judge may be grounds for a new trial. To sustain the charge of bias, however, "the reviewing court must find that a party was so seriously prejudiced as to be deprived of a fair trial." *Aggarwal v. Ponce School of Medicine*, 837 F.2d 17, 22 (1st Cir.1988). As noted in *Aggarwal*, in the often cited passage by Chief Justice Hughes, the role of a federal trial judge was outlined as follows:

"In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law.... It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and com-

menting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination."

*Id.* (quoting *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933)).

From a careful review of the record, it is evident that the district court did not display bias or prejudice against the Cosmes. Rather, the court demonstrated a high degree of care and deliberation in its rulings throughout the trial. Furthermore, the court demonstrated much patience with counsel for both parties and exercised an impartial control over the proceedings. Hence, we conclude that there was no bias or prejudice on the part of the district court.

### E. Costs and Attorney's Fees

In its brief, the Hospital also contends that it is entitled to costs and attorney's fees, since "this appeal is groundless, frivolous and devoid of foundation on the facts and on the law."

We note that, in diversity cases, the federal court in Puerto Rico may apply the Commonwealth's substantive rule authorizing costs, attorney's fees, and other expenses. *See Templeman v. Chris Craft Corp.*, 770 F.2d 245, 250 (1st Cir.1985). Puerto Rico law provides that:

> In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct.

P.R.Laws Ann. tit. 32, app. III, Rule 44.1(d) (Supp.1988). Although we have concluded that the claims made by the Cosmes on this appeal are without merit, we do not find that the appeal was frivolous or obstinate. Hence, Hospital Pavia's request for costs and attorney's fees is denied.

## CONCLUSION

After a careful review of the record, we conclude that the district court committed no reversible error in declaring a mistrial in a first trial, in imposing costs on the parties during discovery after the mistrial, or in its evidentiary rulings during the trial. We also conclude that the record discloses no prejudice or bias on the part of the district court. Hence, the judgment of the district court is affirmed, and all pending motions are rendered moot and dismissed.