32 F.3d 561
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
TOBE PRODUCTS OF AMERICA, INC., Plaintiff, Appellee,
v.
Murray SHAPIRO D/B/A Vintage Creations Ltd, Inc.,
Defendants, Appellants,
VINTAGE CREATIONS, LTD, INC. Defendants, Appellants.
 No. 93-2322
 United States Court of Appeals,
First Circuit.
 August 29, 1994
 
 Appeal from the United States District Court for the District of Rhode Island [Hon. Ernest C. Torres, U.S. District Judge ]
 David B. Wechsler with whom Hirsch Weinig was on brief for appellants.
 Thomas A. Tarro, III with whom Fortunato & Tarro was on brief for appellee.
 D.R.I.
 AFFIRMED.
 Before Cyr and Stahl, Circuit Judges, and Zobel,* District Judge.
 STAHL, Circuit Judge.
 
 
 1
 Following a two-day bench trial, the district court entered judgment in the amount of $55,944.76, plus interest and costs, in favor of plaintiff- appellee Tobe Products of America, Inc., ("Tobe") on its breach of contract claim against defendant-appellant Vintage Creations, Ltd., Inc. ("Vintage"). Vintage challenges this order, asserting that the court erred in making certain underlying factual and mixed fact/law findings. Vintage also argues that the court committed sundry legal errors. We affirm.
 
 I.
 BACKGROUND
 
 2
 Tobe is a Rhode Island importer of glass stones used in the manufacture of jewelry. Vintage is a New Jersey jewelry manufacturer. In early 1991, Vintage entered into a licensing agreement with the New York fashion designer Kenneth Cole in which Cole agreed to lend his name to a new jewelry line Vintage would manufacture and sell. Shortly thereafter, Vintage identified Tobe as a possible source of the stones to be used in this new line. Representatives from Tobe visited Vintage, bringing specimen boards showing the various shapes, sizes, and colors of handmade stones which Tobe could procure from Germany.
 
 
 3
 On April 24, 1991, Vintage contracted with Tobe to purchase approximately 40,000 stones, in various sizes, styles, and colors, for a price of roughly $100,000. The contract provided for a 5% defect rate, and Tobe agreed to credit Vintage for any defective stones over and above this rate. The parties agreed that Tobe would ship the stones to Vintage in lots whenever Vintage requested shipment, and that Vintage would pay for each shipment within forty-five days. The contract also permitted Vintage to maintain an outstanding credit balance of up to $15,000. On October 31, 1991, Tobe was to ship to Vintage any stones on which delivery had not yet been taken.
 
 
 4
 Throughout the spring, summer, and early fall of 1991, Vintage requested and accepted shipments of stones from Tobe. It paid its bills on these shipments in a timely manner. Vintage returned a portion of one of these shipments because it did not need the stones until later in the production run and because it had not yet requested that these stones be shipped. Tobe issued Vintage a credit on the returned stones. During this same time period, Vintage informed Tobe on at least one occasion that more than 5% of the stones it had received were of insufficient quality. It did not, however, return any of the allegedly defective stones for credit or replacement.
 
 
 5
 On October 31, 1991, pursuant to the terms of the contract, Tobe shipped to Vintage all of the stones it then had on hand, together with an invoice for $33,359.63. Vintage made partial payments on this invoice from December 1991 through February 1992, but failed to pay $20,621.85. On November 15, 1991, Tobe received from Germany a late-arriving, final shipment of stones. Upon receiving this shipment, Tobe invoiced Vintage for an additional $35,322.91 and requested delivery instructions. Vintage failed to pay any portion of this invoice, and never responded to the request for delivery instructions. Tobe never shipped these stones to Vintage.
 
 
 6
 All told, Tobe shipped Vintage approximately 32,000 stones. In April 1992, Vintage returned approximately 12,000 of these stones to Tobe, claiming that they were defective. It continued to possess approximately 19,000 stones received pursuant to the contract. At trial, Vintage claimed that because of the alleged defects, it was able to use only between six hundred and one thousand of the stones in the manufacture of the jewelry.
 
 
 7
 In May 1992, Tobe instituted this suit against Vintage to recover the $55,944.76, plus interest and costs, allegedly due it under the contract. In November 1993, the case was tried by Judge Torres. Tobe presented its case through two witnesses. Its sales manager, Alexandra Rainer, testified to the negotiations and course of business between Tobe and Vintage. She further testified that the stones at issue were unique, that they conformed to contract specifications, and that Tobe had made efforts to resell them. Tobe also produced an expert witness, Donald Donnelly, who testified that the stones were unique, conforming, and of very high quality.
 
 
 8
 Vintage's only witness was its vice president, Drew Shapiro. Shapiro testified that he had personally inspected each of the shipped stones and found that 85-90% of them were defective. He also testified that he had not returned the stones because he had reached an oral agreement with Tobe's director, Jurgen Feix, to retain all of the defective stones for a final accounting once each side had completed performance of the contract. Shapiro claimed that continuing to accept and pay for the stones was his only real option; he had invested approximately $300,000 in the jewelry into which the stones were to be set, and risked losing that investment entirely unless he continued to perform under the contract. He therefore relied on Feix's alleged repeated, oral assurances that Tobe ultimately would provide Vintage with a sufficient number of quality stones to meet production needs.
 
 
 9
 On November 4, 1993, Judge Torres issued a bench decision awarding Tobe the full amount of damages sought. In so doing, he specifically found that the disputed stones were unique goods identified to the contract, and that they conformed to contract specifications. He also found that Tobe had made reasonable efforts to resell the stones and that Tobe did not act improperly by failing to deliver the last shipment. Judgment entered on November 10, 1993. This appeal followed.
 
 II.
 DISCUSSION
 
 10
 The primary thrust of Vintage's appellate brief is that the trial court erred in finding that Tobe had carried its burden of proving that (1) the stones were unique goods; (2) the stones conformed to contract specifications; and (3) it had made commercially reasonable efforts to resell the stones it continues to possess. Vintage also takes issue with the court's determination that Tobe acted reasonably in failing to forward the final shipment of stones to Vintage. Finally, Vintage contends that Tobe's failure to provide evidence of market price and/or lost profits requires reversal of the district court's decision. After reciting the relevant standard of review, we discuss each argument in turn.
 
 A. Standard of Review
 
 11
 Insofar as Vintage is challenging the district court's legal rulings, our review is, of course, plenary. E.g., Williams v. Poulos, 11 F.3d 271, 278 (1st Cir. 1993). We will not set aside a court's factual finding, however, unless it is shown to be clearly erroneous. Fed. R. Civ. P. 52(a); Poulos, 11 F.3d at 278. Nor will we overturn a trial court's determination of a fact-dominated mixed law/fact question unless we are persuaded that the determination constituted clear error. Poulos, 11 F.3d at 278 and n.11. And, in cases like this one where the challenged findings "are based on determinations regarding the credibility of witnesses, Rule 52 demands that the appeals court accord even greater deference to the trial court's findings." Rodriguez-Morales v. Veterans Admin., 931 F.2d 980, 982 (1st Cir. 1991); see also Fed. R. Civ. P. 52(a).
 
 
 12
 B. Factual Findings Regarding Burden of Proof
 
 
 13
 The parties agree that Rhode Island law governs this dispute and that R.I. Gen. Laws Sec. 6A-2-709(1), which codifies Sec. 2-709(1) of the Uniform Commercial Code, applies to this action for the contract price of the stones.[1] The parties also agree that, as a prerequisite to recovery of the contract price under Sec. 6A-2-709(1), Tobe had to establish that the stones were unique, that they conformed to contract specifications, and that it had made commercially reasonable efforts to resell them. See Taft-Peirce Mfg. Co. v. Seagate Technology, Inc., 789 F. Supp. 1220, 1228 (D.R.I. 1992) (setting forth conditions precedent to recovery under Sec. 6A-2-709(1)). Their only disagreement is over whether the district court erred in concluding that Tobe had met its burden.
 
 
 14
 Certainly, Tobe did not overwhelm the court with evidence tending to establish the conditions precedent to recovery under Sec. 6A-2-709(1). Mindful of the deference we must accord both the district court's resolution of fact-dominated mixed fact/law questions and its credibility determinations, however, we cannot say that the court committed clear error in making its rulings. With regard to whether the stones were unique, the court heard and credited testimony from Tobe's sales manager, Alexandra Rainier, that Tobe did not carry the stones at issue in stock, but rather ordered them specially from German manufacturers. Moreover, the court heard and credited testimony from plaintiff's expert, Donald Donnelly, that the stones had unique and uncommon shapes and colors.[2] Finally, the court specifically noted that it found Ms. Rainier and Mr. Donnelly to be credible witnesses, and that it did not find Drew Shapiro, the only person who testified on behalf of Vintage, to be a credible witness. No more was required to support its uniqueness determination.[3]
 
 
 15
 With regard to whether the stones were conforming and whether Tobe made commercially reasonable efforts to resell them, the evidence, though thin, also was sufficient. The court heard and credited testimony from Ms. Rainier that (1) she randomly inspected the shipments of stones when they came from Germany; (2) the stones she inspected were conforming;[4] (3) the stones returned by Vintage in April 1992 were conforming; (4) many of the boxes of these allegedly non- conforming stones had never been opened by anyone at Vintage; and (5) she had attempted to resell the stones to other customers, but had been unsuccessful because they were very expensive and came in unusual colors. It also heard and credited testimony from Mr. Donnelly that many of the boxes of stones returned in April 1992 had never been opened and that the allegedly non-conforming stones he inspected were not defective. Finally, the court specifically rejected the only evidence offered by Vintage which tended to indicate that the stones were not conforming: the testimony of Mr. Shapiro.[5] In our view, this is enough to insulate its conformity and commercial reasonableness rulings from reversal on appeal.
 
 C. Other Matters
 
 16
 The other issues raised by Vintage can be disposed of summarily. Vintage's first argument, that the court committed reversible error in ruling that Tobe acted reasonably in failing to forward to Vintage the final lot of stones, is premised entirely upon a contention that the court erroneously interpreted the contract's $15,000 credit limit. We need not reach the merits of this contention, however, because the court also based its reasonableness determination on a supportable, alternative finding that Vintage never responded to Tobe's request for shipping instructions regarding the final lot. And, upon carefully reviewing the record, we can discern no clear error in either the finding that Vintage did not respond to the instructions or in the determination that this failure to respond provided a reasonable basis for Tobe's failure to ship.
 
 
 17
 Vintage's second argument, that reversal is required because Tobe failed to provide any evidence of market price and/or lost profits, is specious. The argument is based entirely upon an incorrect reading of Karen v. Cane, 578 N.Y.S.2d 85 (Cir. Ct. 1991). Karen notes the need for a seller to establish market price in order to prevail on a claim under Uniform Commercial Code Sec. 2-708; it does not establish this as a requirement in the context of an action for the price under Sec. 2-709(1). Such a requirement would make no sense in the context of Sec. 2-709(1), which, by its very nature, allows a seller to recover damages established by a previously agreed- upon sale price when certain conditions are met.
 
 III.
 CONCLUSION
 
 18
 For the reasons stated above, we affirm the district court's entry of judgment in favor of Tobe on its breach of contract claim.
 
 
 19
 Affirmed. Costs to appellee.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 In relevant part, R.I. Gen. Laws Sec. 6A-2-709(1) provides:
 Action for the price.- (1) When the buyer fails to pay the price as it becomes due the seller may recover ... the price,
 (a) Of goods accepted ...; and
 (b) Of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price....
 
 
 [2]
 In a footnote, Vintage makes a half-hearted argument that the court committed reversible error in allowing Mr. Donnelly to testify as an expert pursuant to Fed. R. Evid. 702. It is well settled that a court's admission of expert testimony under Rule 702 will be reversed only for an abuse of discretion. See, e.g., Navarro de Cosme v. Hospital Pavia, 922 F.2d 926, 931 (1st Cir. 1991). We have reviewed the trial transcript and are of the view that the court did not abuse its discretion in determining that Mr. Donnelly, by virtue of his twenty-eight years of experience in importing glass stones from Germany, would provide testimony that would assist it in "understand[ing] the evidence or ... determin[ing] a fact in issue...." See Fed. R. Evid. 702. Accordingly, we reject Vintage's claim of reversible error
 
 
 [3]
 Vintage also argues that the court, in allowing Tobe to argue at trial that the stones were unique, effectively (and prejudicially) allowed Tobe to amend its complaint at the eleventh hour. The complaint, however, seeks contract-price damages (the recovery of which requires a uniqueness showing under the Uniform Commercial Code) and refers to the stones as "specific goods and merchandise." In our view, this was sufficient to put Vintage on notice that the uniqueness of the stones would be an issue at trial. Generally speaking, no more is required under Fed. R. Civ. P. 8. See Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855, 865 (1st Cir. 1993) (discussing the "minimal" requirements of notice pleading under Rule 8). Tobe's uniqueness argument therefore should not be regarded as a de facto amendment to the complaint
 
 
 [4]
 In its brief and at oral argument, Vintage asserted that there was a complete absence of evidence that the shipment which Tobe received in November 1991 but never forwarded to Vintage (as distinct from the stones Vintage returned to Tobe in April 1992) was conforming. This simply is not so. In the course of stating her opinion that the stones conformed to contract specifications, Ms. Rainier gave the following testimony: "I randomly inspected the shipments when they come [sic] from Germany and I also randomly inspected the merchandise that came back from Vintage just to make sure."
 
 
 [5]
 Vintage offered no evidence which either tended to undermine Ms. Rainier's testimony that she had been unable to resell the stones or which tended to show that her efforts were not commercially reasonable